Filed 5/2/14  Marriage of Controulis and Hazard CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re the Marriage of STEPHEN CONTROULIS and JARI HAZARD. | |
| STEPHEN CONTROULIS,<br><br>        Respondent,<br><br>v.<br><br>JARI HAZARD,<br><br>        Appellant. | A136260<br><br>(Contra Costa County<br> Super. Ct. No. D99-01707) |

Jari Hazard (wife) appeals from an order filed on August 22, 2012, which, among other things, granted respondent Stephen Controulis's motion to terminate spousal support, and denied her motion to increase spousal support and imposed discovery sanctions of $20,000 against her.  Wife challenges the order on various grounds, none of which requires reversal.  Accordingly, we affirm.

## FACTS [1]

### A.     *Background*

On April 6, 1999, after almost 14 years of marriage, Stephen Controulis (husband) filed a petition for dissolution of his marriage to wife.  The parties had two children, who

---

[1]     We set forth only those facts as are necessary to resolve the issues raised on this appeal.  The facts are taken from the record provided by wife, which consists of a 10-volume clerk's transcript; all exhibits save two that were admitted at trial; and a partial reporter's transcript of the trial proceedings on June 19 and 20, 2012.

1

were then four and seven years old. The court (Hon. Judith S. Craddick) entered a judgment of dissolution, status only, and awarded parties joint legal and physical custody of the children, whose primary residence would be with father and mother's parenting time to be agreed to by the parties.

On February 11, 2002, the court issued a permanent spousal support order, awarding wife the monthly sum of $4,975, based on the parties' marital standard of living. Husband was ordered to pay spousal support effective January 1, 2002 and "until the remarriage of wife, the death of either party, or further order of the court." The court also ruled: "No income is imputed to [wife] at this time; however, the law requires that upon making a spousal support order that the supported person is informed that it is the goal of this state that each party shall make reasonable good faith efforts to become self-supporting within a reasonable period of time. Generally, that period of time is one-half the length of the marriage. In this case, the duration of the marriage was 14 years. Therefore, the law contemplates that the person receiving spousal support shall make reasonable and good faith efforts to become self-supporting within 7 years. Failure to make reasonable efforts to become self-supporting may be one of the factors considered by this court as a basis for modifying or terminating support."

After the resolution of additional financial issues and husband's request for a modification of the February 11, 2002, order, the court issued an order on December 20, 2002, confirming that husband was to pay permanent spousal support in the sum of $4,975 per month and that no income would be then imputed to wife. The court again admonished wife of her obligation to make reasonable efforts to become self-supporting within seven years, and reminded her that she could not wait "until the [seven] years is imminent" before she made such efforts to become self-supporting.

### B. Current Litigation

On June 10, 2010, husband moved to terminate spousal support. In support of his request, husband asserted that wife had a bachelor's degree in psychology (1982), a Master's Degree in counseling (1985) and a Ph.D. in higher education administration (1993), and that since February 2002 she had made little or no effort to become self-

2

supporting despite the court's admonitions. Husband further alleged that wife was capable of earning income equal to or exceeding spousal support (about $60,000 per year), and she had some income of her own and access to at least $100,000 in cash or liquid assets.

Wife opposed termination of spousal support and made a motion seeking an increase in spousal support. She asserted that the original spousal support award never met the parties' marital standard of living as it was insufficient to allow her to obtain reasonable health insurance, regular psychiatric care on the level necessitated by her psychiatric disorder, and housing for the children equal to that provided by husband. She further asserted that in the dissolution proceeding she had presented evidence that she had a psychiatric disorder that then rendered her totally disabled from part or full-time employment based on reports by her expert witnesses. Wife also submitted a letter from her then treating psychiatrist, Phyllis Cedars, M.D., who was prepared to testify to the specifics of wife's psychiatric disability and inability to tolerate stress. Wife contended that despite her ongoing pathology, she had attempted numerous endeavors to make money with the goal of becoming self-supporting but she was unsuccessful, and she was never able to use her education to obtain employment because of her psychiatric disability.

On June 19, 2012, the parties appeared for trial before Hon. Charles S. Treat. Husband was represented by counsel and wife appeared in propria persona. After denying wife's request for a continuance, the court commenced the trial. The court informed the parties that it would consider both husband's motion for termination of spousal support and wife's motion to increase spousal support. The court also confirmed "that in this trial [wife] was entitled (and expected) to make her full and best case for not only the maintenance of support, but its increase."

After wife made her opening statement, the court took judicial notice of husband's exhibits Nos. 1-10, and exhibits Nos. 1-8 were admitted into evidence. The court also admitted into evidence husband's exhibits nos. 12-30, and 33-38. Husband testified in his case-in-chief and also presented the testimony of the following witnesses: wife, wife's

3

now former psychiatrist Phyllis Cedars, M.D., husband's psychiatric expert Stephen M. Raffle, M.D.,[2] and husband's accounting expert CPA Jeff A. Stegner.[3] After husband rested, wife presented her case in chief. Wife testified in a narrative form regarding her retention of her former counsel, her attempts to respond to husband's discovery requests, the reasons she thought her spousal support should be increased and why a termination of spousal support was not supported by the evidence. At the conclusion of wife's case, husband's counsel gave a closing argument. The court took the matter under submission in order to read some of the exhibits that had been admitted into evidence, including the report of a court-appointed expert Betty Kohlenberg.[4] The court told the parties that it did not "intend to issue a detailed factual exposition," but would issue "a brief statement [summarizing] . . . the reasons for [its] ruling."

The court filed a decision summarizing "the most important reasons" for terminating spousal support "in either direction, effective July 1, 2012," and denying wife's motion for an increase in spousal support. The court explained: "I am not finding that [wife] has in fact become self-supporting. Clearly she has not. I find that [wife] has

---

[2]     In his designation notice of his psychiatric expert, husband indicated the expert was willing to testify on the following issues: "[t]he nature and extent of any mental condition or disorders suffered by [wife]," "whether [wife] has been and/or continues to be disabled from employment as a result of such condition(s);" "whether and to what extent [wife's] ability to seek and/or maintain employment is or has been impaired by reason of such condition(s);" "whether such condition(s) are likely to impair or disable [wife] from seeking or maintaining employment in the future;" "[t]he extent, if any, that [wife's] ability to respond to legal discovery and/or to otherwise participate in the current legal proceedings is or has been impaired by reason of any mental condition or disorder she suffers." Additionally, the expert's testimony would include "a description of [his] examination and testing of [wife], and his impressions and diagnoses derived therefrom."

[3]     In his designation notice of his accounting expert, husband indicated the expert had agreed to testify at trial and was "expected to testify about the annual earnings of [wife] from her eBay business, based on information produced by [wife] and by PayPal."

[4]     Before trial, the court had appointed Betty Kohlenberg to examine, evaluate, and assess (1) wife's ability to obtain employment, with or without additional training or education, (2) the availability of employment opportunities commensurate with wife's abilities; and (3) wife's earning capacity in such employment.

4

made virtually no efforts to become self-supporting since the judgment in this case. [Wife] acknowledges being warned several times by Judge Craddick, in 2000-01, that she had an obligation to become self-supporting, and that seven years was a presumptively reasonable time for her to do so. By her own candid testimony, however, [wife] took no serious steps at all to become self-supporting for many years. This was not laziness, forgetfulness, or procrastination. It was a conscious decision that she would not work or attempt to work, and an attitude that she refused to consider any career path that she was not 'interested in.' While she did open her EBay-based home business, she is quite clear that she never intended that as a means of self-support, but rather as a way of keeping herself occupied and making herself get out of the house. Not until the present motion was filed did she make even halting efforts at seeking real employment, and that only ineffectively. Her testimony and her actions speak quite clearly: Her intention (and, most likely, her expectation) have always been simply to live off [husband's] spousal support for the rest of her life. She has succeeded in doing so for nearly the length of the marriage. [Wife] evinces no consciousness that she has any obligation to provide for herself. [¶] I am not as convinced as [husband] or Dr. Raffle are, that [wife] is reliably capable of working at a conventional job outside the home. It is true, I think, that the level of dysfunction [wife] displayed in court is situational – instigated by her extreme distress at the prospect of losing spousal support – and therefore not necessarily to be expected in all settings. Nevertheless, I believe she is dubiously employable at best, because of her abrasive and impulsive personality. . . . For present purposes, however, I accept that [wife's] inability to work with others is something that she can't help. [¶] But I believe that [wife], if she would make up her mind to try, is capable of doing a great deal more than she is doing to support herself through home-based self-employment or independent contractor work. I accept Dr. Raffle's opinion that [wife] has intentionally and systematically tried to depict herself as more disabled than she really is, by attempting to cheat on Dr. Raffle's tests. Her conduct of her EBay business evinces a capability for sustained, organized and successful enterprise, with attention to detail and orientation toward a goal. Further, I have read several examples of [wife's] writing. She

5

is a talented writer, fully capable of well-organized, clearly expressed, and well-thought-out exposition of a nuanced set of ideas. Neither of these can be squared with the dysfunctional scatterbrain she pretends to be. I am not her career counselor, but I believe she can find ways of harnessing these talents that can work around her lack of interpersonal skills. [¶] Bluntly, there is a very good reason why [wife] has not succeeded in any such enterprise: because she has not only refrained from trying, but consciously rejected any prospect of trying. If there is any doubt about her ability to become self-supporting, she has intentionally created that doubt by her own actions and decisions. She cannot willfully refrain from trying to support herself, and consciously sabotage all efforts to show whether or not she could support herself – and then plead that she should remain on the spousal-support dole indefinitely because she is not supporting herself." When neither party requested a formal statement of decision or made a motion for reconsideration or for a new trial, the court filed its "findings and order after hearing" on August 22, 2012. Wife now appeals.[5]

## DISCUSSION

### I. Issuance of a *Gavron* Warning in Initial Spousal Support Orders

As noted, in the dissolution proceeding, the court issued orders on February 20, 2002 and December 20, 2002, which contained *Gavron* warnings (*In re Marriage of Gavron* (1988) 203 Cal.App.3d 705, 712) (*Gavron*), admonishing wife that she was expected to make reasonable efforts to become self supporting within seven years of January 2002.[6] Wife now argues the *Gavron* warnings were inadvisable because it was

---

[5] We deem wife's August 10, 2012, notice of appeal from the June 22, 2012, decision to be a premature notice of appeal from the August 22, 2012, order. (Cal. Rules of Court, rule 8.104(d)(2).) Also, on December 16, 2013 and again on February 27, 2014, husband has written to this court asking us not to schedule oral argument on certain dates. However, on June 3, 2013, this court sent oral argument waiver notices to both parties. Because no request for oral argument was timely made by either party, oral argument was deemed waived by this court on June 14, 2013. Consequently, we deny husband's requests regarding the scheduling of oral argument as untimely.

[6] After *Gavron* was decided, the Legislature enacted Family Code section 4330, which reads: "(a) In a judgment of dissolution of marriage or legal separation of the

6

unreasonable to expect her to become self-supporting in light of her severe psychological issues and extended absence from the work force. However, wife forfeited review of this issue by not appealing from the February and December 2002 orders. (See, e.g., *In re Marriage of Biderman* (1992) 5 Cal.App.4th 409, 412-413; *In re Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33, 50.) Even assuming those earlier orders were not appealable, as wife argues, we are not now in a position to address this issue because wife has not provided a complete record of the proceedings that formed the bases for the February and December 2002 orders. (See, e.g., *Wagner v. Wagner* (2008) 162 Cal.App.4th 249, 259 [appellant's failure to include hearing transcript foreclosed court's review of claim of error].)

---

parties, the court may order a party to pay for the support of the other party an amount, for a period of time, that the court determines is just and reasonable, based on the standard of living established during the marriage, taking into consideration the circumstances as provided in Chapter 2 (commencing with Section 4320). [¶] (b) When making an order for spousal support, the court may advise the recipient of support that he or she should make reasonable efforts to assist in providing for his or her support needs, taking into account the particular circumstances considered by the court pursuant to Section 4320, unless, in the case of a marriage of long duration as provided for in Section 4336 [presumption that marriage of 10 years or more, from date of marriage to the date of separation, is one of long duration], the court decides this warning is inadvisable."

Section 4320 provides, in relevant part, that in ordering spousal support, the court shall consider various circumstances including "[t]he goal that the supported party shall be self-supporting within a reasonable period of time. Except in the case of a marriage of long duration as described in Section 4336, a 'reasonable period of time' for purposes of this section generally shall be one-half the length of the marriage. However, nothing in this section is intended to limit the court's discretion to order support for a greater or lesser length of time, based on any of the other factors listed in this section, Section 4336, and the circumstances of the parties." (*Id*., subd. (*l*).) In this case, Judge Craddick apparently determined that notwithstanding the fact the parties had been married for almost 14 years at the time of their separation, a reasonable period of time for spousal support was seven years starting from January 2002, and that *Gavron* warnings were appropriate.

## II.     Denial of Wife's Request for a Trial Continuance

### A.     *Relevant Facts*

On April 23, 2012, wife's counsel filed a motion to withdraw and sought an ex parte order shortening time for the motion to be heard as trial was then set for June 19 and June 20, 2012. The basis for the relief was that the attorney-client relationship had broken down such that there was a conflict of interest. Wife opposed the motion, arguing that her counsel had decided to withdraw after wife refused to settle the matter. Wife asserted the proposed settlement was not in her best interest but was enticing to counsel who would be paid her attorney fees pursuant to settlement. On May 24, 2012, Judge Treat referred counsel's motion to withdraw to another judge for an in camera hearing to "prevent any bias . . . at trial." On the same day, after an in camera hearing, Hon. Trevor White granted counsel's motion to withdraw.

Within one week of the court's decision on counsel's motion to withdraw, wife, representing herself, filed two motions seeking pendente lite attorney fees and costs and an increase in spousal support. Wife explicitly stated that the trial was set for June 19 and 20, 2012, and, "I need to make this point: I do NOT want a continuance." Instead, she sought $35,000 to hire an attorney to attempt to settle the matter. In the event the case did not settle, wife intended to represent herself, as she neither wanted nor could afford another attorney and she felt certain the outcome would be the same whether or not she had legal representation. Wife moved ex parte to advance the hearing date of her motion for pendente lite relief to a date before the start of the trial, which request was opposed by husband and ultimately denied by Judge Treat during the first week in June.

At the beginning of the trial on June 19, 2012, wife made an oral motion to continue the trial date until after the court considered her motion for pendente lite attorney fees and costs, which was then scheduled to be heard on July 11. She explained to the court that she wanted to retain an attorney because she was unable to represent herself in this complicated case. Alternatively, she requested a settlement conference because no attorney was willing to take her case without payment. She asserted her depression and anxiety had kept her from getting further involved in the matter and being

8

present at previous hearings. Husband opposed the request for a continuance, noting, among other things, that the trial date had been set for six months, the request for a continuance was being raised for the first time that morning, and he had three witnesses ready to appear at the scheduled two-day trial.

The court denied wife's request for a trial continuance "for several reasons. [¶] First, we've had a settlement conference. And the indication that I received is that although I don't know the details, you had received what your then counsel thought was a good settlement offer and you declined to consider it. [¶] Second, your request for continuance is itself untimely. That should have been presented well before now. [¶] Third, I already granted a motion for attorney's fees for what I felt was adequate. Your attorney then was of the view it was insufficient, but it was what I thought was adequate in the circumstances. [¶] Fourth, my understanding of the reasons that you are without an attorney is not because you lack fees but because your attorney . . . convinced Judge White there was a conflict that required her to withdraw."

### B. Analysis

Wife presents several arguments in support of her claim that the trial court abused its discretion in denying her request to continue the trial date. We conclude her contentions are unavailing.

"Continuances are granted only on an affirmative showing of good cause requiring a continuance. [Citations.] Reviewing courts must uphold a trial court's choice not to grant a continuance unless the court has abused its discretion in so doing." (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 823 (*Falcone & Fyke*); see Cal. Rules of Court, rule 3.1332 [provisions governing continuances].)

Contrary to wife's contention, the record does not demonstrate she was incapable or unable to file a timely motion to continue the trial date due to her psychological problems. After her counsel's withdrawal, wife, representing herself, was able to file two cogent motions for pendente lite relief and an increase in spousal support, in which she explicitly eschewed any need for a continuance of the trial date. Once the court refused to advance wife's request for pendente lite relief in early June, 2012, she had more than

9

sufficient time to request a continuance of the trial date. Nevertheless, wife waited until the morning of the trial to make an oral request for a continuance, which was unfair to husband who had prepared for trial and subpoenaed witnesses. Given the uncertainty that wife would be able to retain counsel to appear in court and try the case within a reasonable time even if granted pendente lite attorney fees, the court reasonably denied the request for a trial continuance.

We are not persuaded by wife's argument that the trial court should have granted a trial continuance because of her appearance and conduct in court. At the time the court denied wife's request for a trial continuance, she had not said or exhibited any conduct that called into question her ability to proceed with the trial. The court's recognition that the courtroom was a difficult setting for wife, "even more so than the typical" in propria persona litigant, does not establish an abuse of discretion in denying the trial continuance.

## III.   Termination of Spousal Support and Denial of Increase in Spousal Support

Wife challenges the termination of her spousal support and the denial of her request for an increase in spousal support on the grounds that the court failed to follow established legal principles and based its findings on insufficient evidence. As we now discuss, we conclude wife's arguments are unavailing.

To the extent wife asks us to consider the court's statements in its written decision, in support of her assertion of error, we are precluded from doing so. (*In re Marriage of Ditto* (1988) 206 Cal.App.3d 643, 647 (*Ditto*).) Where, as here, the parties did not request a formal statement of decision, "we must assume the court made whatever findings [were] necessary to sustain" the order. (*Michael U. v. Jamie B.* (1985) 39 Cal.3d 787, 792-793, superseded on other grounds by statute as stated in *In re Zacharia D.* (1993) 6 Cal.4th 435, 448.)[7] "A statement of decision allows the trial court to review its memorandum of intended decision and 'to make . . . corrections, additions or deletions it

___

[7] Wife's reliance on *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 282, 305; *In re Marriage of Geraci* (2006) 144 Cal.App.4th 1278, 1285, 1296; *In re Marriage of McTiernan & Dubrow* (2005) 133 Cal.App.4th 1090, 1106, is misplaced as in those cases the trial courts issued statements of decision.

10

deems necessary or appropriate.' [Citation.] Such statement thus enables a reviewing court 'to determine what [law] the trial court employed . . . .' [Citation.] It is the statement of decision which allows the court to place upon *the record* its view of facts and law of the case. [Citation.] A failure to request a [statement of decision] results in a waiver of such findings." (*Ditto, supra*, at p. 647.) "Because a statement of decision was not requested, the trial court did not have the opportunity to amend; the [order] therefore governs" and "it will be presumed on appeal that the trial court found all facts necessary to support the [order]." (*Id.* at pp. 648, 649.) Thus, the only issue before us is whether there is " 'substantial evidence' to support the [trial] court's 'implied findings.' " (*In re Marriage of Hebbring* (1989) 207 Cal.App.3d 1260, 1274.)

Wife argues that the record contains affirmative evidence demonstrating that during the 10 years since the entry of the spousal support orders she was not capable of becoming self-supporting and she made reasonable efforts to become self-supporting consistent with her ability to do so but she was unsuccessful in her endeavors. However, we must reject wife's "attempt to reargue on appeal those factual issues decided adversely to [her] at the trial level" as "contrary to established precepts of appellate review." (*Hasson v. Ford Motor Co.* (1982) 32 Cal.3d 388, 398-399.) Whether wife was capable of supporting herself and made reasonable efforts to become self-supporting were "question[s] addressed peculiarly to the trial court which heard [wife's] testimony and observed [wife's] demeanor at trial," together with the other testimonial and documentary evidence admitted at the trial. (*In re Marriage of Sheridan* (1983) 140 Cal.App.3d 742, 749.) As an appellate court, we cannot grant relief by relying solely on " 'isolated bits of evidence,' " as wife urges. (*DiMartino v. City of Orinda* (2000) 80 Cal.App.4th 329, 336 (*DiMartino*).) Of more significance is the fact that wife has failed to provide us with either a reporter's transcript or a settled statement in lieu of the reporter's transcript of the testimony elicited during husband's case-in-chief. Consequently, we must resolve wife's claim of error against her for failure to "furnish an adequate record of the . . . proceedings." (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295-1296 [appellants had burden "to provide an adequate record to assess error;" appellants

"should have augmented the record with a settled statement of the proceeding;" and "[b]ecause they failed to furnish an adequate record of the . . . proceedings, [their] claim must be resolved against them"].)[8]

## IV. Trial Court's Order Directing Wife to Pay $20,000 in Discovery Sanctions

### A. Relevant Facts

On or about August 2010, husband served his first discovery requests using form interrogatories (13 questions), an initial set of special interrogatories (52 questions), and a demand for the production of documents (26 general categories and 24 categories relating to the special interrogatories). The form interrogations requested information about wife's health and current financial circumstances, her efforts to seek employment and her business ventures since 2002. The first set of special interrogatories and document demands sought information pertaining to wife's income, financial accounts, real property ownership, and other information about her economic circumstances and standard of living. Wife filed no motion for a protective order. In October and November 2010, husband extended wife's time to provide responses. But, as of

---

[8]     In her reply brief, wife argues that if we deem the missing trial testimony necessary to address her appellate arguments, we should sua sponte exercise our authority to augment the record with the missing reporter's transcript and to waive payment for the transcript in order to avoid a miscarriage of justice. However, we will not order a transcript at public expense "where alternative measures are reasonably available" to a litigant as in this case. (*Graziano v. Appellate Department* (1978) 84 Cal.App.3d 799, 801.) Our appellate rules permit litigants to proceed by using a settled statement in lieu of a reporter's transcript, but wife failed to make the required application in the superior court. (See Cal. Rules of Court, rule 8.137(a).) Wife makes no argument that "the trial was too complex or protracted to permit the preparation of an adequate settled statement from memory or notes." (*People v. Goudeau* (1970) 8 Cal.App.3d 275, 281-282.) We recognize wife was not represented by counsel at the time she was required to designate the record on appeal and serve and file a motion in the superior court requesting the preparation of a settled statement instead of a reporter's transcript. (See Cal. Rules of Court, rules 8.121(a), 8.137(a).) Nevertheless, as a litigant appearing in propria persona, she " 'is entitled to the same, but no greater, consideration than other litigants and attorneys,' " and she " 'is held to the same restrictive rules of procedure as an attorney.' " (*Bianco v. California Highway Patrol* (1994) 24 Cal.App.4th 1113, 1125-1126.)

December 1, 2010, wife's only substantive response was the submission of copies of her federal income tax returns for 2007 through 2009.

On December 16, 2010, husband filed his first motion to compel discovery responses and sought monetary sanctions pursuant to Family Code section 271[9], which requests were opposed by wife. The trial court held a hearing on January 26, 2011, at which counsel were present without their clients. The court suggested that wife seek the appointment of a guardian ad litem. The court then made the following orders: (1) husband was to pay the costs of subpoenaing wife's medical records after wife signed the necessary authorizations for the release of the documents, and (2) wife was to sign under oath that the copies of her tax returns were true and correct copies. The court continued the matter to May 13, 2011, at which time the court intended to further consider husband's request that wife file responses to discovery seeking information about her psychological condition and efforts to become self-supporting.

After the court's order and in response to wife's request for consideration under the Americans with Disability Act, the parties reached an agreement with the court's assistance regarding the outstanding discovery. Pursuant to the agreement, wife signed releases allowing husband's counsel to obtain wife's tax returns directly from the IRS

---

[9] Family Code section 271 reads: "(a) Notwithstanding any other provision of this code, the court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys. An award of attorney's fees and costs pursuant to this section is in the nature of a sanction. In making an award pursuant to this section, the court shall take into consideration all evidence concerning the parties' incomes, assets, and liabilities. The court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against whom the sanction is imposed. In order to obtain an award under this section, the party requesting an award of attorney's fees and costs is not required to demonstrate any financial need for the award. [¶] (b) An award of attorney's fees and costs as a sanction pursuant to this section shall be imposed only after notice to the party against whom the sanction is proposed to be imposed and opportunity for that party to be heard. [¶] (c) An award of attorney's fees and costs as a sanction pursuant to this section is payable only from the property or income of the party against whom the sanction is imposed, except that the award may be against the sanctioned party's share of the community property."

and wife's medical records directly from her physician. Husband's counsel also agreed to obtain requested information about wife's eBay sales directly from either eBay and/or PayPal (the company through which it was believed virtually all of wife's eBay sales were processed). On May 20, 2011, the court issued an order directing wife to produce all the information she had provided to her tax attorney who had prepared her 2010 tax return. Wife's counsel also agreed that wife would submit responses to the outstanding discovery requests, section by section, on a weekly basis.

In June 2011, wife filed a motion for pendente lite attorney fees and costs, which request was opposed by husband. In early August 2011, husband agreed to grant wife an extension of time to respond to the outstanding discovery until after the hearing on wife's request for pendente lite attorney fees and costs. On August 10, 2011, husband was directed to pay to wife the sum of $35,000 as pendente lite attorney fees within one week of the court's order. Husband granted wife an extension of time to submit her discovery responses until August 24, 2011.

Husband did not receive any discovery responses from wife, and on October 24, 2011, he filed a second motion to compel responses to the outstanding discovery propounded in August 2010 and a second set of 13 special interrogatories that had been served on wife in response to her declaration regarding her 2011 earnings from any business ventures, and again sought monetary sanctions under Family Code section 271, which requests were opposed by wife. At a hearing on December 13, 2011, husband appeared with counsel and wife's counsel appeared without her client. The court granted, in part, husband's motions to compel discovery compliance. Wife was directed to submit responses to the form interrogatories and the second set of special interrogatories by court-imposed dates. Compliance with the other propounded discovery (first set of special interrogatories and document demand) was deemed moot as wife had served her responses to that discovery on Friday, December 9, 2011. The court continued the matter to March 29, 2012, at which time the court intended to resolve any issues relating to the adequacy or completeness of wife's discovery responses and husband's requests for attorney fees and sanctions. In response to the court's order, wife filed a declaration

14

addressing husband's complaints about her discovery responses. She also sought additional pendente lite attorney fees and costs, which request was opposed by husband.

At the March 29, 2012 hearing, the court issued an order regarding the remaining outstanding discovery issues: (1) husband's motion to compel was granted, in part, and wife was directed to file amendments to her responses to certain interrogatories and the document demand; and (2) husband's request for sanctions was granted but the court reserved for further consideration "at the time of trial" the appropriate monetary award because the court needed to hear "further evidence relative to [wife's] psychiatric condition and financial condition." At a further hearing on April 23, 2012, the court directed wife to be in "full compliance" with its March 29, 2012, discovery order by April 27, 2012, and she was awarded an additional sum of $25,000 as pendente lite attorney fees.

At the conclusion of the trial, the court granted husband's request for "discovery sanctions." The court explained: "On March 29, 2012, the Court spent considerable time addressing a number of problems with [wife's] discovery responses. ([Wife] still has not complied with my order from that hearing.) I stated at the time that at least some discovery sanctions would be appropriate, but deferred setting a number until trial. My reason for delay was to assess the evidence concerning [wife's] mental-health issues and the extent, if any, to which they may have caused the inadequacy of her discovery responses. I observed that most of the deficiencies appeared, at first view anyway, to be simply a matter of sloppy lawyering by [wife's] (now-former) counsel . . .; but I wanted to reserve judgment to assess whether any of the problem might have arisen from things [wife] could not really help. [¶] I find no evidence that any of [wife's] mental-health issues disabled her (or her attorney) from responding timely and properly to [husband's] discovery. [Wife] herself testified that she cooperated fully in discovery and responded fully and timely to her attorney's demands – a description seriously at odds with what her attorney had represented to me in several prior hearings. Which of those versions is true I cannot say. But I can say that although [wife] has no reluctance to point out her own faults when she thinks they help her position, she vehemently and credibly disclaims any

15

inability to comply with discovery. Instead, I believe that the seriously deficient level of [wife's] discovery response is part of her conscious campaign to maintain her spousal support by refusing to cooperate in litigating [husband's] motion. What part of the deficiency is due to [wife's] obstructive attitude, and what part due to [her former counsel's] sloppy lawyering, I cannot say. But both are sanctionable. [¶] Having reviewed the live and documentary proof on this subject, I award $20,000 in discovery sanctions to [husband]. [Husband] is authorized to deduct these sanctions from [wife's] share of the omitted accounts."[10]

### B. Analysis

We conclude wife's arguments challenging the trial court's award of sanctions do not require reversal.

Husband sought monetary sanctions pursuant to both Family Code section 271 and Code of Civil Procedure sections 2023.030, 2030.290, and 2031.300. The trial court did not identify the statutory basis for the sanctions award in either its June 22, 2012 decision or its August 22, 2012 order. Nevertheless, given the court's explanation for its award, "[t]he more reasonable interpretation" of its August 22, 2012 order is that the court awarded a monetary sanction against wife pursuant to Family Code section 271. (*In re Marriage of Lucio* (2008) 161 Cal.App.4th 1068, 1082; see Fam. Code, § 271, subds. (a), (c).) [11]

---

[10]     As part of this post-dissolution proceeding, the parties asked the court to determine their joint request for a division of several community-property nonqualified financial accounts, collectively worth a little over $100,000, which had not been previously divided between the parties. The court agreed, "[a]s [husband] suggested and [wife] agreed," that "those [accounts] should be divided in kind now. [Husband] is directed to take all necessary steps to accomplish that. [Wife] is directed to cooperate reasonably in those steps, such as by signing any necessary consents or forms." On this appeal wife does not challenge the court's distribution of the funds in these financial accounts.

[11]     Consequently, we do not further address whether the award was properly made pursuant to the Code of Civil Procedure sections governing sanctions for discovery misuse. (*In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1225 ["under settled

Family Code section 271, "advances the policy of the law 'to promote settlement and to encourage cooperation which will reduce the cost of litigation.' [Citation.] Family law litigants who flout that policy by engaging in conduct that increases litigation costs are subject to the imposition of attorneys' fees and costs as a sanction." (*In re Marriage of Petropoulos* (2001) 91 Cal.App.4th 161, 177 (*Petropoulos*).) " 'A sanctions order under [Family Court] section 271 is reviewed for abuse of discretion. [Citation.] Accordingly, we will overturn such an order only if, considering all of the evidence viewed most favorably in its support and indulging all reasonable inferences in its favor, no judge could reasonably make the order.' [Citations.] ' "We review any findings of fact that formed the basis for the award of sanctions under a substantial evidence standard of review." ' " (*Falcone & Fyke, supra*, 203 Cal.App.4th at p. 995.)

We find unavailing wife's challenge to the sufficiency of evidence supporting the court's award of sanctions. (*Parker v. Harbert* (2012) 212 Cal.App.4th 1172, 1178 (*Parker*).) She asserts the court mischaracterized her testimony and failed to consider the conduct of her former counsel. However, as we have noted, we cannot grant relief from the court's order by relying on "isolated bits of evidence," as wife suggests. (*DiMartino, supra*, 80 Cal.App.4th at p. 336.) More importantly, in ruling on the matter of sanctions, the trial court relied on both documentary evidence and the testimony elicited at the trial. Thus, it was wife's responsibility to include a reporter's transcript or a settled statement in lieu of the reporter's transcript of the testimony elicited in husband's case in chief. Having failed "to designate an adequate record for this court to evaluate [her] claim, . . . we presume the [order] imposing sanctions . . . . is correct." (*Parker, supra,* at p. 1178; see *id*. at pp. 1175-1176, 1178 [court upheld judgment imposing $92,000 sanctions pursuant to Family Code section 271 against husband because he failed to include reporter's transcript of 13-day trial].)

We also reject wife's challenges to the court's imposition of a monetary sanction against her alone and not her counsel. " '[W]hile [Family Code] § 271 impose[s] duties

appellate principles we may affirm the court's sanctions order on any ground supported by the record"].)

upon *counsel* as well as counsel's client to cooperate in seeking to resolve the litigation [citation], those duties are enforced under the statute by means of a fees and costs award *against the party, not counsel* – even when the sanctionable conduct lies solely with a party's counsel.' " (*In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1535-1536, fn. 17, quoting from Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2010) § 14:237, p. 14–63; see Fam. Code, § 271, subd. (c).) Additionally, before imposing a sanction payable by wife, the trial court had no duty, either sua sponte or if requested, to hold a hearing to determine the culpability of wife's counsel. Before a court may impose a Family Code section 271 sanction, notice and an opportunity to be heard must be given to the party against whom the sanction is proposed to be imposed. (*Id*., subd. (b).) In this case wife was afforded all the due process to which she was entitled –the court specifically informed her that at trial it would consider monetary sanctions for discovery noncompliance, she was given an opportunity and did address the issue at trial, and she did not move for either reconsideration or a new trial on the sanction issue. (See *Petropoulos, supra,* 91 Cal.App.4th at pp. 178-179.) [12]

## V.    Trial Court's Award of Pendente Lite Attorney Fees to Wife

### A.    *Relevant Facts*

Before trial, husband initially voluntarily paid wife $2,500 as attorney fees and costs and the trial court later directed husband to pay wife $60,000 as attorney fees and costs. After her counsel withdrew, wife, representing herself, filed a motion on May 29, 2012, seeking an order directing husband to (a) pay all the fees and costs wife then owed to her former counsel and experts hired by former counsel, and (b) pay fees to allow wife to hire new counsel for settlement. In support of her request, wife submitted a declaration in which she expressly stated that she did "NOT want a continuance" of the trial then scheduled for June 19 and 20, 2012. She asserted she neither wanted nor could

---

[12]    To the extent wife seeks relief based on complaints that her former counsel was ineffective, "[w]e need not assess the validity of these charges, for we are aware of no authority, and [wife] has cited us none, which would permit [an] . . .appellate court to grant [any relief] . . . to an unsuccessful litigant in a civil case . . . on the grounds of incompetency of counsel." (*Chevalier v. Dubin* (1980) 104 Cal.App.3d 975, 978.)

afford a new attorney and would be representing herself if the matter went to trial. Wife further asserted that although her former counsel had submitted a list of proposed expert witnesses, wife did not consent to those witnesses appearing on her behalf and she did not want to spend money for those witnesses to appear. However, she asked that her therapist be allowed to speak on her behalf and she wanted the court-appointed vocational evaluator, Betty Kohlenberg, to testify but wife claimed she did not have the money to pay for the witness to appear at trial. Approximately two weeks before trial, wife filed an ex parte motion to advance the hearing date of her attorney fees motion to a date before the start of the trial, which request was opposed by husband and denied by the court.

At the conclusion of the trial, the court commented in its written decision that it had declined to advance the hearing date scheduled for wife's pending motion for attorney fees because it "was an attempt to seek a different result on the same attorney fee motion [the court had recently] ruled on on April 23, 2012;"and wife had "no legitimate reason to expect a different result." In all events, the court found wife's motion for attorney fees was moot. The court explained: "[Wife] pointedly stated that she did not want to continue the trial. There was no plausible prospect that she would be able to hire counsel who could be ready for the trial date, no matter how much attorney fees [the court] might award. [Wife] also sought funds to enable her to call two experts – but the report of one of those experts was in fact admitted and considered, while [wife] chose not to offer the other's report because she disagreed with it. [¶] In any event, the motion sought fees only to enable her to litigate the then-pending spousal support issue. That issue is now resolved by this Decision, and there is no reason to entertain a request for fees for further litigation of it."

## B. Analysis

We reject wife's contention that the trial court was required to award her the full amount she requested for pendente lite attorney fees and costs "based on the disparity in income between the parties *alone*." In awarding pendente lite attorney fees and costs, the court is required to consider not only "the wealth and available resources of the parties,"

19

but also "the complexity of the issues involved in the litigation, . . . and the litigation costs already incurred and expected to be incurred through trial." (*In re Marriage of O'Connor* (1997) 59 Cal.App.4th 877, 884.) On this record, wife has failed to demonstrate that the court abused its discretion in its award of pendente lite attorney fees and costs of $60,000, which sum was slightly more than an entire year of spousal support that wife had been receiving from husband. [13]

### DISPOSITION

The August 22, 2012 order is affirmed. Respondent Stephen Controulis is awarded costs on appeal.


_____
Jenkins, J.


We concur:


_____
McGuiness, P. J.


_____
Siggins, J.

---

[13] Because the matter of attorney fees was an issue for the trial court, we deny wife's request that we now grant her $23,102.98 in attorney fees, which she currently owes her former attorney, on the ground that husband's excessive discovery conduct led to much of the attorney fees incurred by her.