[No. B027510. Second Dist., Div. Five. July 11, 1988.]

In re the Marriage of MILDRED and BERNARD GAVRON.
BERNARD GAVRON, Respondent, v.
MILDRED GAVRON, Appellant.

COUNSEL

Hillman, Friedman & Cohen and Ira M. Friedman for Appellant.

Bernard Silverman and Honey Kessler Amado for Respondent.

OPINION

**BOREN, J.**—The issue in this appeal is whether the trial court abused its discretion in terminating spousal support to the 57-year-old wife based on the wife's failure to become gainfully employed or to seek vocational training. Because there was no showing of a material change of circumstances since the court's prior support order, the court did abuse its discretion. We reverse.

### FACTS

After being married for approximately 25 years and with one adult child, the parties separated in December of 1976. An interlocutory judgment of dissolution of marriage was entered in November of 1978, and a final judgment was entered on June 1, 1979. The court reserved jurisdiction and ordered on August 3, 1979, as part of its further judgment on reserved issues, that the husband pay spousal support of $1,100 per month until further order of the court. In May of 1981, the court denied without any

findings the husband's request to reduce the spousal support to $550 per month for a year and thereafter to terminate the support.

In June of 1986, the husband again sought a modification of the spousal support order and requested a termination of his obligation to pay spousal support. The parties filed declarations in support of and in opposition to the requested modification. After a hearing in March of 1987, the court ordered on March 10, 1987, that (1) the previously ordered support payments of $1,100 continue until August 1, 1987, and then cease, and (2) the court retain jurisdiction over the issue of spousal support until the death or remarriage of the wife.

According to the testimony at the hearing and declarations of the parties, early during the marriage the wife attended classes one year at city college, soon thereafter became a licensed electrolysis technician, and maintained her license for approximately 12 years but never worked in that capacity. Apparently while the husband was in dental school, the wife was employed for several years as a business office representative for the telephone company where she took orders for telephone service and answered questions about services. She then worked for nine months in her husband's newly opened dental office where she acted as a receptionist, made appointments, did filing and bookkeeping, developed X-rays and kept the office clean.

Many years later and after the husband and wife were separated in 1976, the wife performed volunteer charitable work at Cedars-Sinai Hospital where she wheeled a snack cart into patients' rooms. In 1982, the wife worked for a salary as a receptionist in a beauty shop but quit after three months. Essentially, the tasks required were too physically demanding. As the wife explained, "I really couldn't handle it at that time. I had to get into the safe on the floor, and it was too hard to get up and down, and I had to jump up from the phone every time it rang and ask the beautician, of which there were a lot, 'Do you want to come to the phone?' or 'Can you see this person?' or this type of thing. It was just overwhelming, and run out to the meter to put coins in their meters and—"

For approximately five months in 1984, the wife worked as an occasional driver four or five hours a week for an elderly woman. However, she stopped working in that capacity because, as she explained, "That was also physically impossible. After you get there and help her out and fasten her belt and open the car door. She had this large heavy car door with the arms, and to get her in and when you get where you're going you repeat the process and then go park the car. It's—it was just too hard on me." The wife also chauffeured her mother about and found that driving for both of these women "was too much."

The wife's 87-year-old mother lived in the house with her, and she tended to the needs of the elderly woman. The wife's mother had income, contributed money for food but not household expenses, and maintained joint checking and stock brokerage accounts with the wife.

The wife had tumors on her feet which necessitated the use of a corrective insert in her shoes. She also had a shoulder problem and arthritis in her knees and hands for which she exercised and took medication. According to the wife, these health problems limited her mobility and thus impaired her ability to work. The wife's medical claims were undocumented but uncontradicted. Other than as previously discussed, she sought no other employment and no job training or counseling since separating from her husband.

The wife claimed that since 1981, she had to sell several assets and had to forego needed repairs on her car and her house. However, the wife had $40,000 in the bank, owned her unmortgaged home which she valued at approximately $240,000, owned interests in several real estate ventures, received monthly interest and investment income of $633, and owed no money to anyone. Three years earlier, she took a vacation in China.

Although the husband was not legally obligated to do so, he has paid the substantial educational expenses of his two step-children who attend private schools. The husband also alleged a diminished ability to contribute to his retirement and profit-sharing plans and a decreased demand for his dental specialty (root canal work) because that area of dental expertise is being increasingly handled by general practitioners. The husband used money from the profit-sharing trust to purchase a new home and to pay the balance of the money owed to the wife at the time of dissolution. After the March 1987 hearing, the court found that the husband terminated his pension plan and borrowed heavily against his profit-sharing plan to sustain his current standard of living. The court further determined that the husband's income had increased somewhat and his expenses had decreased, but that the husband still claimed his expenses exceeded his income. According to the 1985 tax returns of the husband and his current wife, they had an adjusted gross income of $93,359; the husband's current wife is employed by him at a gross monthly salary of $1,500.

In its ruling on the requested modification of spousal support, the court concluded, in part, as follows: "Aside from demonstrating a lack of diligence, in regards to becoming employed, [Wife] remains highly improvident by relying on [Husband] for her sole support. She apparently has given no thought to the possibility that [Husband] may become incapacitated or meet an untimely demise. It should be noted that a marriage of twenty-five (25) years is not tantamount to social security. The Court is mindful that

this is a lengthy marriage and that [Husband's] duty to support [Wife] will not terminate by the mere passage of time. Nonetheless, the [Wife's] failure to become employable or to seek training after so many years shift[s] the burden to her to demonstrate her continued need for support in light of her continued inaction in this regard."

## DISCUSSION

■ It is well settled that although a trial court has broad discretion in modifying or revoking an award of spousal support (Civ. Code, § 4801, subd. (a)), the court's discretion is not unlimited. (*In re Marriage of Prietsch & Calhoun* (1987) 190 Cal.App.3d 645, 655 [235 Cal.Rptr. 587]; *In re Marriage of Melton* (1980) 107 Cal.App.3d 559, 564 [165 Cal.Rptr. 753].) ■ "To obtain a modification of a previous spousal support order, the moving party must show a material change of circumstances since the time of the prior order." (*In re Marriage of Norvall* (1987) 192 Cal.App.3d 1047, 1060 [237 Cal.Rptr. 770]; see *In re Marriage of McElwee* (1988) 197 Cal.App.3d 902, 909 [243 Cal.Rptr. 179]; *In re Marriage of Kuppinger* (1975) 48 Cal.App.3d 628, 633 [120 Cal.Rptr. 654].) Although the passage of time may be related to a change in circumstances, it is not alone a sufficient basis for modification. (*Edwards* v. *Edwards* (1975) 52 Cal.App.3d 12, 15 [124 Cal.Rptr. 742]; *In re Marriage of Wilson* (1975) 51 Cal.App.3d 116, 119 [123 Cal.Rptr. 887].) The "change of circumstances" which can be considered includes all factors affecting need and ability to pay. (*In re Marriage of Morrison* (1978) 20 Cal.3d 437, 454 [143 Cal.Rptr. 139, 573 P.2d 41]; *In re Marriage of Prietsch & Calhoun, supra,* 190 Cal.App.3d at p. 655.)

In *In re Marriage of Sheridan* (1983) 140 Cal.App.3d 742, 748 [189 Cal.Rptr. 622], the *original* support order scheduled payments only for a limited five-year period and was made with the court's expectation that the supported spouse would become self-supporting by the end of that time. When the court's stated expectation was not met, then a change in circumstances was deemed to have occurred, justifying a modification in the support order. Similarly, in *In re Marriage of Pekar* (1985) 173 Cal.App.3d 367, 371-372 [218 Cal.Rptr. 823], where the spouse was already gainfully employed, the spousal support was scheduled to terminate at the end of a five-year period based on the legitimate assumption that the supported spouse would continue working and be self-supporting as of the termination date. The court held that after the cut-off date for spousal support, the supported spouse would be required to carry the burden of showing the necessity for continued support and the existence of good faith efforts to become self-sufficient. (*Id.* at p. 372.)

The present situation, however, involves no material change of circumstances which could justify the trial court's termination of spousal support. Unlike in *Pekar,* the wife was unemployed at the time of the original order for spousal support in 1979 and had been unemployed for many years. Also, in contrast to the situation in *Sheridan,* at the time of the original order the court did not set forth any requirements or conditions envisioning the wife's employment. In 1981, after the husband's request to reduce and then terminate the wife's spousal support was denied, the wife was briefly and marginally employed on two occasions. In 1987, when the husband obtained the order terminating spousal support, nothing regarding the wife's employment had materially changed. She remained in March of 1987 as she was at the time of the prior order, unemployed and, at best, marginally employable.

Nor had there been any material change in the husband's ability to pay the previously ordered spousal support. In fact, the court found that his income had increased somewhat and his expenses had decreased. The husband still claimed his expenses exceeded his income. His overall financial picture remained essentially the same.

We recognize that it is in the best interests of both spouses and of society in general that the supported spouse become self-sufficient. Civil Code section 4801, subdivision (a)(1)(A) expressly directs that in determining the amount and duration of spousal support, a court is to consider as a factor the supported spouse's marketable skills and ability to engage in gainful employment. As the court observed in *In re Marriage of Morrison, supra,* 20 Cal.3d at page 451, "It certainly may be inferred that by specifically setting forth this factor, the Legislature intended that all supported spouses who were able to do so should seek employment. It also appears the Legislature expected that courts would issue orders encouraging these spouses to seek employment and to work toward becoming self-supporting." (See *In re Marriage of Pekar, supra,* 173 Cal.App.3d at p. 371; *In re Marriage of Rosan* (1972) 24 Cal.App.3d 885, 896 [101 Cal.Rptr. 295].)

Nonetheless, the trial court here erroneously held that the wife's "failure to become employable or to seek training after so many years shift[s] the burden to her to demonstrate her continued need for support in light of her continued inaction in this regard." To the contrary, absent stated or reasonably undisputed *prior* expectations as to the supported spouse's future self-sufficiency at the time of the previous support order, after a lengthy marriage and an appropriate retention of jurisdiction to modify spousal support, "the burden of justification is on the party seeking termination." (*In re Marriage of Dennis* (1973) 35 Cal.App.3d 279, 285 [110

Cal.Rptr. 619]; see *In re Marriage of Prietsch & Calhoun, supra,* 190 Cal.App.3d at p. 660.)

Inherent in the concept that the supported spouse's failure to at least make good-faith efforts to become self-sufficient can constitute a change in circumstances which could warrant a modification in spousal support is the premise that the supported spouse be made aware of the obligation to become self-supporting. It is particularly appropriate here that there should have been some reasonable advance warning that after an appropriate period of time the supported spouse was expected to become self-sufficient or face onerous legal and financial consequences. There was a lengthy marriage during which the wife was unemployed except at the outset. The wife also presumably devoted herself initially to the development of her husband's earning capacity, rather than to her own earning capacity, then to wifely and parental duties, and now to the care of her elderly mother.

The prerequisite awareness of the judicial expectation of future self-sufficiency can arise in numerous contexts. For example, there may be an explicit statement by the court at the time of its original support order regarding employment expectations of the supported spouse (*In re Marriage of Sheridan, supra,* 140 Cal.App.3d at pp. 746, 748), a motion and ensuing order that the supported party "submit to an examination by a vocational training consultant" (Civ. Code, § 4801, subd. (e)), a stipulated agreement which addresses the wife's ability to obtain future employment (see *In re Marriage of Norvall, supra,* 192 Cal.App.3d at p. 1062), or a justified assumption of continued future employment based on the supported spouse's employment during the parties' separation and at the time of the original support order which contained a reasonable termination date for support (see *In re Marriage of Pekar, supra,* 173 Cal.App.3d at p. 368). Here, however, the record does not indicate that this unemployed 57-year-old wife had any prior awareness that the court would require her to become self-sufficient.

The wife may have lacked the personal foresight to more diligently seek employment prospects eight years earlier in 1979 when the original support order was fashioned. Nonetheless, she cannot be penalized now, years later, because of an apparent lack of judicial foresight in not forcing her to focus on the drastic legal and financial consequences of the then-unrevealed expectation that she become self-sufficient.

Finally, the court's March 10, 1987, order, constituting one giant stepdown in spousal support in approximately four and one-half months from $1,100 per month to nothing, was not "based upon reasonable inferences to

be drawn from the evidence, [but upon] mere hopes or speculative expectations." (*In re Marriage of Rosan, supra,* 24 Cal.App.3d at p. 896.) ■ Even if the court's order had not constituted one abrupt, future cutoff but had entailed automatically and gradually decreasing support payments at specified intervals, it " '. . . cannot be based on mere supposition as to what the supported party's future circumstances might be. Evidence in the record must support a reasonable inference that needs will be less with each step-down and that the spouse can realistically be self-supporting at the time nominal payments are set to begin.' [Citation.]" (*In re Marriage of Prietsch & Calhoun, supra,* 190 Cal.App.3d at p. 656.) ■ The record here is barren of any such evidence.

## DISPOSITION

The order under review is reversed. The trial court is directed to reinstate the spousal support provisions which existed in the original order of August 3, 1979, until any appropriate further order of the trial court. Appellant is awarded costs on appeal.

Ashby, Acting P. J., and Kennard, J., concurred.