Filed 8/28/14  Laughman v. Laughman CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| EILEEN K. LAUGHMAN,<br><br>　　　　　Plaintiff and Respondent,<br><br>　v.<br><br>RICHARD KEITH LAUGHMAN,<br><br>　　　　　Defendant and Appellant. | B251863<br><br>(Los Angeles County<br>Super. Ct. No. BD497590) |

APPEAL from an order of the Superior Court of Los Angeles County. Patrick A. Cathcart, Judge.  Affirmed.

Law Office of Anthony D. Zinnanti and Anthony D. Zinnanti for Plaintiff and Respondent.

The Reape – Rickett Law Firm and Donald S. Sherwyn for Defendant and Appellant.

_____

Richard Keith Laughman appeals from the family law court order denying his motion for a downward modification of his spousal support payments to former wife Eileen K. Laughman. We reject his contention that his ex-wife was obligated to use anything other than good faith in attempting to become employed as a psychologist and affirm because substantial evidence supports a finding that her efforts to obtain employment have been conducted in good faith.

## FACTS AND PROCEDURAL HISTORY

Richard Keith Laughman and Eileen K. Laughman married in 1973, separated sometime between August and December 2008, and separately filed for divorce in December 2008.[1] A stipulated judgment was entered in November 2011, awarding Eileen monthly spousal support of $11,500. As part of the spousal support award, the judgment said that Eileen was "admonished of the policy of the state of California to become self sufficient and further ordered to use full time efforts in seeking full time employment. Pursuant to Family Code, section 4320 and *In re Marriage of Gavron* (1988) 203 Cal.App.3d 705, [she] has been notified of her obligation to become self-supporting."

Richard and Eileen first lived in Minnesota, where Eileen was a licensed psychologist and taught children with learning disabilities. She and Keith later moved to California, which did not have licensing reciprocity with Minnesota. In April 2013 Keith brought a motion to reduce Eileen's spousal support payments based on her alleged lack of diligence in looking for work, particularly her failure to accumulate the 1500 hours of clinical supervision she needed to become a licensed psychologist in California.

Keith's supporting declaration was based on his interpretation of the quarterly reports filed by John Stevenson, the vocational counselor Eileen was ordered to use to

---

[1] For ease of reference we will refer to these parties by their first names. Richard and Eileen have been before us once before, in a case that concerned Eileen's claim to a share of certain separate property assets belonging to Richard. (*Laughman v. Laughman* (Feb. 10, 2014, B245837) [nonpub. opn.].)

facilitate her return to the job market. According to Keith, the reports showed that Eileen was doing little more than applying to two or three jobs each month, which fell well short of the court-ordered requirement that she use full-time efforts to find work.

Eileen's opposition declaration said that she had worked part-time as a teacher in Minnesota and did not obtain her psychology license until 2004. She and Keith moved to California in 2005. In order to become a licensed California psychologist, she needed 1500 hours of supervised clinical experience. Her research showed that a typical internship pays from $10 to $18 per hour but, despite "tireless" search efforts and the help of her vocational counselor, "none of those jobs can be found." Eileen claimed that the poor economy had made her job search even harder.

According to Eileen, she pays Stevenson for his vocational services. He searches for jobs and each month they discuss his findings, review the current job market and job posts, and explore job alternatives. She also conducts online job searches, reads newspapers and trade magazines, and spends 30 to 90 minutes a day going through e-mails and checking for job search responses. This includes websites devoted to mental health professionals, but some of the jobs listed there require a license and she had not found any internship positions.

Eileen said she also looks for teaching jobs and applied to be an adjunct psychology professor at her local community college. Eileen also looked into teaching jobs in area public schools but was told there were no new jobs due to budget cutbacks. She had applied to "every job opening for which I am qualified to apply for, but have received no response that fits the category of psychology I received training in."

She has discussed her job search with other therapists and offered to pay them to provide her with the necessary hours of clinical supervision. Due to ethical constraints, however, those practitioners declined to do so. She contacted more private practice psychologists in the past month, but they had lost patients to the poor economy and could not afford to give her their remaining clients.

In addition she was taking mandatory continuing education courses in order to maintain her Minnesota license as well as companion dog training workshops in order to use that form of therapy if and when she obtained her California license.

Finally, Eileen stated that there were usually no more than two or three job openings each month for which she qualified, and asked the court to consider both her age (now 60), and the periods she was unemployed in order to support Keith's career.

Stevenson's declaration said that the number of positions for which Eileen qualified was "severely limited," in part due to the economic downturn and in part because she was not licensed in California. She has applied for those positions but had not been asked to interview. Eileen had also been unable to find someone to provide the supervised clinical experience she needed to obtain her California psychology license. One reason for that is the large number of psychology doctoral graduates competing against her. Stevenson also believed that despite laws against age discrimination, Eileen was being overlooked due to her age.

Stevenson attached copies of his quarterly reports to his declaration, which ran from September 2011 through May 2013. The reports stated that Eileen applied for many job openings where either no California license was required or she merely had to be eligible to obtain licensing in the future, including: several at Pacific Clinics; St. John's Child and Family Development Center; Serco; several at UCLA; Spectrum Healthcare Resources; STG International, Inc.; Children's Institute; several at USC; Village Family Services; Fuller Theological Seminary; Azusa Pacific University; Cerritos Community College; Loyola Marymount University; Cal Lutheran University; College Hospitals; Cedars Sinai Hospital; Glendale Adventist Medical Center; and the Los Angeles County Department of Mental Health.

Keith submitted a reply declaration complaining that Eileen had not provided e-mails from potential employers, copies of job applications she supposedly submitted, or anything beyond Stevenson's reports. As he saw it, Eileen's declaration showed that she spent minimal time looking for a limited class of jobs or taking dog-training classes, none of which amounted to the full time job search efforts required by the 2011 judgment.

4

Keith also provided a declaration from his vocational counseling expert, Susan Wise Miller. Attached to her declaration was a copy of her 2010 vocational examination report on Eileen's employability. Wise stated that Eileen had the ability and opportunity to work. She criticized the declaration of Eileen's vocational counselor (Stevenson) because he did not: (1) specify where or how many resumes Eileen had submitted or the titles of the jobs she sought; or (2) address Eileen's efforts to obtain the clinical supervision she needed in order to obtain her California license.

Wise also wondered whether Stevenson had coached Eileen on different strategies such as joining groups on the LinkedIn website, networking by attending professional conferences and meetings, or taking classes to update her knowledge and expertise. Finally, Wise disagreed that Eileen's age was a barrier to employment because wisdom and experience were considered important attributes for psychological counselors.

The trial court denied Richard's request to decrease Eileen's spousal support, finding that Eileen had acted reasonably and in good faith and that her difficulties were due to her age and the poor job market. The court ordered Eileen to continue using Stevenson's vocational counseling services in order to find a job and satisfy her clinical supervision requirement on a voluntary basis if possible.

## DISCUSSION

1. *Applicable Law and Standard of Review*

Among the factors to be considered by a trial court when determining spousal support are: (1) the supported spouse's marketable skills and ability to become gainfully employed (Fam. Code, § 4320, subd. (a)(1)); and (2) the goal that the supported party become self-supporting within a reasonable period of time. (Fam. Code, § 4320, subd. (2)(l).) By setting forth these factors, the Legislature intended that all supported spouses who were able to do so should seek employment. The Legislature also intended that the courts would issue orders encouraging supported spouses to take the steps needed

5

to become self-supporting. (*In re Marriage of Gavron, supra,* 203 Cal.App.3d at p. 711 (*Gavron*).)

A supported spouse's failure to make good faith efforts to become self-sufficient can constitute a change of circumstances that warrants either reduction or elimination of spousal support. Inherent in this concept is advance warning that the supported spouse would face a loss of spousal support if he or she did not become self-sufficient within a reasonable period. (*Gavron, supra,* 203 Cal.App.3d at p. 712.) We review the trial court's ruling on a motion to modify spousal support under the abuse of discretion standard. When exercising its discretion, the trial court must follow established legal principles and base its findings on substantial evidence. (*In re Marriage of West* (2007) 152 Cal.App.4th 240, 246.)

2.    *Eileen Was Obligated to Make Good Faith Efforts to Obtain Employment*

The trial court denied Richard's motion to reduce Eileen's spousal support because it believed she acted in good faith in looking for work. Richard contends this was error because Eileen was obligated to make "full-time efforts" in her employment search pursuant to the 2011 stipulated judgment, while the evidence showed she did far less than that.

According to Richard, *Gavron's* good faith standard is too amorphous to be meaningful, a defect that was remedied by application of the "full-time efforts" provision in the judgment. Richard contends that the heightened "full time" standard was applied by the trial court in 2011 because vocational expert Wise's 2010 report showed that despite an earlier *Gavron* warning Eileen had done little to obtain work or the required 1500 hours of clinical supervision she needed, a requirement that could be completed within one year at 30 hours per week.

The stipulated judgment must be construed according to the statutory rules governing the interpretation of contracts. Any ambiguity in the language must be construed in favor of the right to spousal support. (*In re Marriage of Iberti* (1997) 55 Cal.App.4th 1434, 1439.) Absent from Richard's analysis is the sentence that

6

immediately follows the "full-time efforts" requirement:  that "[p]ursuant to Family Code [section] 4320 and [*Gavron*], . . .  [Eileen] has been notified of her obligation to become self-supporting."  These two provisions must be interpreted together.  (Civ. Code, § 1641; *Zalkind v. Ceradyne, Inc.* (2011) 194 Cal.App.4th 1010, 1027.)  As a result, we believe the "full time efforts" language is modified by the subsequent reference to *Gavron*, which held that a supported spouse risked the loss of spousal support unless he or she made good faith efforts to obtain employment.

This makes sense because, despite Richard's claim to the contrary, we believe that in this context "full time" *is* ambiguous.  As Richard points out, "full time" is generally understood to mean 40 hours per week.  Does this mean that Richard could have obtained a spousal support reduction if Eileen had spent fewer than 40 hours each week looking for work?  Would 35 hours a week be enough?  Would Eileen have to keep time sheets or punch a time clock to verify that she was putting in sufficient time each week?  Merely asking these questions shows how unworkable Richard's construction actually is.  While a job search can be time consuming, it seems unlikely that a fruitful eight hours could be devoted to that search day in and day out, especially in a slow job market.  Accordingly, a heightened requirement based solely on time spent looking for work seems to serve no useful purpose.[2]

We believe the "full-time efforts" language is best viewed in light of the expectation that Eileen could complete her clinical supervision requirement within a year if she worked 30 hours a week or more.  However that expectation hinged on her ability to find a psychologist willing to supervise her at all, much less at that level.  When viewed in that light, and coupled with the judgment's reference to *Gavron*, we conclude that Eileen was required to use good faith in order to find such a position.  We next examine whether the evidence supports the trial court's finding that she did so.

---

[2]     We are not asked to decide, and therefore do not consider, whether a heightened standard of diligence could ever be imposed.

3.      *There Is Substantial Evidence of Eileen's Good Faith*

Richard's appellate briefs did not consider the possibility that the trial court correctly measured Eileen's conduct against the *Gavron* good faith standard and he has failed to analyze the evidence in that light. We therefore deem the issue waived. (*Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218.) We alternatively conclude on the merits that the trial court's good faith finding is supported by substantial evidence.

Between the declarations of Eileen and Stevenson it appears that there were a limited number of psychological counseling-related positions open to someone who was not licensed in California, in part because of the poor economy. Stevenson's quarterly reports identified many to which Eileen submitted resumes. Eileen said she regularly looks online and in trade publications for appropriate job openings, had applied to become a community college psychology instructor, and had looked into public school teaching positions at nearby school districts, all without success.

As for finding a California-licensed psychologist to supervise her for the required 1500 hours so she could obtain her California license, she has sought out practitioners and even offered to pay them to take her on, but has found no one willing to do so. She has been told that this also is due in part to the poor economy. According to Stevenson, Eileen's search was complicated by the fact that she was competing against many other unlicensed psychology doctorates.

Richard points to instances where Eileen admittedly turned down internship offers "in recent years," but neglects to specify that those occurred in 2008, long before the stipulated judgment and *Gavron* warnings. They are therefore irrelevant to an analysis of Eileen's conduct after the 2011 judgment was entered. Ultimately, despite Richard's attempts to discredit or minimize this evidence, we believe the trial court reasonably found a good faith effort by Eileen to find work or make herself employable.**3**

---

**3**      In conjunction with his appellate reply brief, Richard has asked us to augment the record with portions of Eileen's deposition transcript that he contends undercut her

8

**DISPOSITION**

The order denying Richard's motion to modify spousal support is affirmed.  Eileen shall recover her costs on appeal.

RUBIN, ACTING P. J.

WE CONCUR:

FLIER, J.

GRIMES, J.

---

claims that she devoted herself to her role as homemaker before the divorce and was making reasonable efforts to become employed.  We deny that request because the deposition materials were not part of Richard's modification motion and therefore were not before the trial court.  (*People v. Catlin* (2001) 26 Cal.4th 81, 170-171, overruled on another ground in *People v. Nelson* (2008) 43 Cal.4th 1242, 1253-1256.)  We note that some of the statements Richard wants us to consider were included in Wise's 2010 report, which was before the trial court and are part of the record on appeal, and we have considered those as part of our analysis.