Filed 4/13/16  Marriage of Cosby CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| In re the Marriage of DONNA and BRUCE COSBY. | D067043 |
| DONNA COSBY,  Appellant,  v.  BRUCE COSBY,  Respondent. | (Super. Ct. No. DN155829) |

APPEAL from an order of the Superior Court of San Diego County,

Patti C. Ratekin, Commissioner.  Affirmed.

Tritt & Tritt and James F. Tritt for Appellant.

Law Offices of Sondra S. Sutherland and Sondra S. Sutherland for Respondent.

## I.

## INTRODUCTION

Donna Cosby appeals an order of the trial court reducing the amount of spousal support paid to her by her ex-husband, Bruce Cosby, to zero. Bruce[1] requested termination and/or modification of the $4,000 per month in spousal support to which the parties had stipulated approximately five years earlier after he learned that Donna had participated in a "commitment ceremony" with another man and was living with that man.

Donna asserts three grounds for reversal of the trial court's order. She first contends that Bruce "did not proffer, nor did the trial court find, a material change of circumstances to justify the modification order." (Formatting omitted.) Donna next claims that the order should be reversed because "the trial judge did not comply with the statutory requirement of considering, weighing, and applying all of the factors set forth in Family Code section 4320." (Formatting omitted.) Finally, Donna argues that the order should be reversed "on the ground that it leaves the partie[s] at significantly different standards of living and therefore constituted an abuse of discretion . . . ." (Formatting omitted.)

We conclude that Donna has not demonstrated that the trial court abused its discretion in reducing Bruce's spousal support obligation to zero. We therefore affirm the court's order.

---

[1] We will use the first names of individuals referred to in this opinion, for clarity.

II.

FACTUAL AND PROCEDURAL BACKGROUND

Bruce and Donna married on August 15, 1983 and separated on March 26, 2009, for a marriage of 25 years, seven months duration. The couple have a daughter who was 25 years old at the time the parties divorced.

Donna initiated the action for legal separation in May 2009. Bruce eventually requested dissolution of the marriage. In February 2010, the parties reached a stipulated agreement regarding spousal support. Pursuant to the agreement, Bruce was to pay Donna $4,000 per month in interim spousal support, to commence as of February 1, 2010. This amount was based on Bruce receiving $9,865 per month in income, $3,063 in military retirement income (of which Donna was entitled to a community share), and Donna having $600 in income per month.

The parties entered into a final stipulated judgment in early May 2010 in which they disposed of their assets and debts. The stipulated judgment required Bruce to pay Donna $4,000 per month in spousal support, plus an additional $1,000 per month for 20 months. According to the stipulated judgment, the parties agreed that the $4,000 per month would meet Donna's reasonable needs, pursuant to the "middle class standard of living established during the marriage." The stipulated judgment also provided that Bruce would pay Donna her portion of the military retirement income until she was able to arrange to receive it directly.

Pursuant to the stipulated judgment, Bruce's spousal support obligation would "cease to be due on the earliest of the death of Respondent, the death of Petitioner, the

3

remarriage of Petitioner, Petitioner's entry into a registered domestic partnership under California law, or the equivalent under the laws of any other jurisdiction, or further Court order." The original typewritten version of the stipulated judgment included "the cohabitation by Petitioner with another adult unrelated person" as another event that would terminate the spousal support obligation, but these words were lined out of the signed agreement.

The stipulated judgment also included a so-called *Gavron*[2] warning, as follows:

> "It is the goal of the State of California that each Party shall make reasonable good faith efforts to become self-supporting as provided for in section 4320 of the Family Code. The failure to make reasonable good faith efforts may be one of the factors considered by the Court as a basis for modifying or terminating support. The Court finds that Petitioner has been advised that she has a duty to contribute to her own support, to work to eventually become self-supporting, and to manage her estate and financial affairs reasonably and in a manner that protects its value, produces a reasonable return in the form of income or capital gain, and utilizes assets in a manner to reduce the need for support, and that failure to do any of these things may be considered by the Court in setting support in the future."

The parties stipulated that in setting the spousal support award at $4,000 per month, "*the parties have considered each of the factors set forth in section 4320 of the Family Code*, including Petitioner's ability to reside rent free with utilities paid by Respondent from the date of separation until a formal spousal support order by stipulation of the parties took effect February 1, 2010, Respondent's payment and assumption of debts existing at the date of separation, Respondent's agreement to take on

---

[2] *In re Marriage of Gavron* (1988) 203 Cal.App.3d 705, 712 (*Gavron*).

4

the entire liabilities of the former family residence which has a net negative equity in a depressed housing market, which resulted in an offset to Respondent's rental income received on his separate property estate for purposes of determining spousal support at this time. No rental income of Respondent or free living expenses of respondent due to his significant separate property estate were considered in the determination of spousal support due to Husband's servicing obligations associated with the Woodhaven property." (Italics added.)

On July 31, 2014, Bruce filed a request for an order (RFO) to modify Donna's spousal support award. In his RFO, Bruce sought multiple alternative forms of relief. Specifically, he sought either (1) the termination of the existing spousal support order and termination of the court's jurisdiction; (2) a reduction in the amount of support to $0.00; or (3) if spousal support was not reduced to $0.00, the imposition of a vocational evaluation, job contacts order, and the disclosure of Donna's efforts to become self-supporting. In his supporting declaration, Bruce asserted the following:

> "Donna married Todd Catlin on August 25, 2013, although she is trying to avoid the legal consequences by calling it a 'commitment ceremony'. As described more fully below, their ceremony was complete with announcements, a wedding shower, wedding cake, wedding ceremony at a Lutheran church, wedding photographs, wedding rings, a wedding reception, and a change of relationship status on Donna's Facebook page to 'married'."

Bruce also declared that as of July 25, 2013, Donna had informed him that she had moved into a home in Oceanside, California. The address was that of a home owned by Todd Catlin. In October 2013, Donna notified Bruce that she had moved into a home in Anaheim Hills, California. A year later, Donna notified Bruce that she had moved to an

5

address in Anaheim, California. Bruce believed that Donna was covered by Todd's health insurance through his employment.

Bruce also addressed each of the factors set forth in Family Code section 4320 in his Declaration.

In response to Bruce's request to modify spousal support, Donna submitted her own declaration, as well as the declaration of Todd Catlin. Todd acknowledged in his declaration that he and Donna are "in a committed relationship" and that they "live together." Todd stated that he does "not provide financial support for Donna," but also stated that "we are able to live in [a] middle class suburban residence because we split the rent." Todd declared that he "take[s] home about $2,725.20 per month," after taxes. He pays half the rent on the shared home, and the rent together with his other expenses totals $2,500.00 per month. That amount also includes $245 in utilities.

Donna acknowledged that she lives with Todd. Donna's declaration addressed two issues, as evidenced by the two main subheadings in the document: (1) "My Cohabitation with Todd has Not Increased my Ability to Support Myself, and has Not Improved my Standard of Living;" and (2) "I Have a Limited Earning Capacity." Donna's Income and Expense Declaration stated that she had worked in November and December 2013, for 20 hours per week, with pay of $8.05 per hour. Donna earned a total of $837.06 in 2013 according to her W-2 statement. Donna listed her assets in cash, checking accounts, savings accounts, money market or other deposit accounts as totaling $19,000. Donna listed $0.00 as her expenses for utilities. She asserted that her total expenses per month were $5,662.98, of which $1747.50 were "expenses paid by others."

6

In her declaration, Donna stated that she had "$50" in monthly "medical" expenses, but in her Income and Expense Declaration, Donna stated that she had $490.00 per month in "Health-care costs not paid by insurance." Donna's income included the $4,000 in spousal support from Bruce, as well as her share of Bruce's military retirement benefit, which was $1,276.86 per month.

The trial court heard from the parties and the parties' attorneys on the matter of Bruce's request for modification of spousal support on September 23, 2014. The trial court ultimately declined to terminate spousal support entirely, but did reduce the amount of support to zero. Toward the end of the hearing, the court asked the attorneys, "I assume the 4320s are in the judgment?" Bruce's attorney responded in the affirmative. Donna's attorney said nothing. The court then stated, "So we'll incorporate the prior 4320s and make those [the] 4320s [with respect to this order]."

The court's "Findings and Order After Hearing" was filed on October 10, 2014. That document includes the following statements regarding the court's findings:

> "a. The Court finds that Petitioner has had more than five (5) years since the parties['] separation on May 12, 2009 to become self-supporting, but has made no effort to obtain additional skills. She has only been working part-time and receiving her share of Respondent's U.S. Navy retirement pay. In the time since the *Gavron* warning until now, Respondent hasn't done what the Court would expect.

> "b. The Court also finds it would be inequitable to continue the support when Respondent has clearly moved on with her life and is in a real committed relationship with someone else, holding herself out to be married and as having gone through a wedding on Facebook."

7

The order also "adopts and incorporates herein the Fam. Code § 4320 findings from the parties' stipulated Judgment, filed May 3, 2010."

Donna filed a timely notice of appeal.

## III.

## DISCUSSION

A. *Legal Standards*

"Modification of spousal support, even if the prior amount is established by agreement, requires a material change of circumstances since the last order. [Citations.] Change of circumstances means a reduction or increase in the supporting spouse's ability to pay and/or an increase or decrease in the supported spouse's needs. [Citations.] It includes all factors affecting need and the ability to pay." (*In re Marriage of McCann* (1996) 41 Cal.App.4th 978, 982 (*McCann*).) "A trial court considering whether to modify a spousal support order considers the same criteria set forth in Family Code section 4320 as it considered in making the initial order." (*In re Marriage of West* (2007) 152 Cal.App.4th 240, 247.)

Family Code section 4320 provides:

> "In ordering spousal support under this part, the court shall consider all of the following circumstances:
>
> "(a) The extent to which the earning capacity of each party is sufficient to maintain the standard of living established during the marriage, taking into account all of the following:
>
> "(1) The marketable skills of the supported party; the job market for those skills; the time and expenses required for the supported party to acquire the appropriate education or training to develop those

8

skills; and the possible need for retraining or education to acquire other, more marketable skills or employment.

"(2) The extent to which the supported party's present or future earning capacity is impaired by periods of unemployment that were incurred during the marriage to permit the supported party to devote time to domestic duties.

"(b) The extent to which the supported party contributed to the attainment of an education, training, a career position, or a license by the supporting party.

"(c) The ability of the supporting party to pay spousal support, taking into account the supporting party's earning capacity, earned and unearned income, assets, and standard of living.

"(d) The needs of each party based on the standard of living established during the marriage.

"(e) The obligations and assets, including the separate property, of each party.

"(f) The duration of the marriage.

"(g) The ability of the supported party to engage in gainful employment without unduly interfering with the interests of dependent children in the custody of the party.

"(h) The age and health of the parties.

"(i) Documented evidence, including a plea of nolo contendere, of any history of domestic violence, as defined in Section 6211, between the parties or perpetrated by either party against either party's child, including, but not limited to, consideration of emotional distress resulting from domestic violence perpetrated against the supported party by the supporting party, and consideration of any history of violence against the supporting party by the supported party.

"(j) The immediate and specific tax consequences to each party.

"(k) The balance of the hardships to each party.

9

"(l) The goal that the supported party shall be self-supporting within a reasonable period of time. Except in the case of a marriage of long duration as described in Section 4336, a 'reasonable period of time' for purposes of this section generally shall be one-half the length of the marriage. However, nothing in this section is intended to limit the court's discretion to order support for a greater or lesser length of time, based on any of the other factors listed in this section, Section 4336, and the circumstances of the parties.

"(m) The criminal conviction of an abusive spouse shall be considered in making a reduction or elimination of a spousal support award in accordance with Section 4324.5 or 4325.

"(n) Any other factors the court determines are just and equitable."

"Appellate review of orders modifying spousal support is governed by an abuse of discretion standard, and such an abuse occurs when a court modifies a support order without substantial evidence of a material change of circumstances." (*McCann*, *supra*, 41 Cal.App.4th at pp. 982-983.) " 'So long as the court exercised its discretion along legal lines, its decision will not be reversed on appeal if there is substantial evidence to support it.' " (*In re Marriage of Biderman* (1992) 5 Cal.App.4th 409, 412.) "We ' "must accept as true all evidence tending to establish the correctness of the trial judge's findings, resolving all conflicts in the evidence in favor of the prevailing party and indulging in all legitimate and reasonable inferences to uphold the judgment." ' " (*In re Marriage of Bower* (2002) 96 Cal.App.4th 893, 899.)

B.     *Bruce identified, and the trial court found and relied on, a material change of circumstances justifying a modification of spousal support*

Donna contends that Bruce "did not proffer, nor did the trial court find, a material change of circumstances to justify the modification order." (Formatting omitted.) Donna's argument in this regard consists of two contentions. First, she contends that

10

Bruce did not properly identify either Donna's cohabitation with Todd or her failure to become self-supporting as the bases for his request for modification of the spousal support order, and therefore, did not provide her with sufficient notice of the changed circumstances on which the trial court ultimately relied. Donna's second argument is that the trial court did not actually find the existence of a material change of circumstances sufficient to justify the court's modification of spousal support to zero.

With respect to Donna's first argument, Donna asserts that "the only purported change in circumstances pled by Husband was the [incorrect] allegation that Wife had remarried." (Bracketing retained from original.) Donna relies on California Rules of Court, rule 5.92(a)(4), which requires a party to "set forth facts sufficient to notify the other party of the declarant's contentions in support of the relief requested," to argue that Bruce failed to proffer a changed circumstance that sufficiently notified her of his contentions in support of the relief he was requesting. She further contends that she was "only given Due Process notice of Husband's contention that there was a changed circumstance based upon the Wife's remarriage," and that "[c]onsequently, Wife was only required to respond to that particular contention." According to Donna, Bruce did not "plead cohabitation as a changed circumstance, nor did Husband plead Wife's failure to earn or attempt to earn sufficient income to be self supporting."

The record does not support Donna's assertions in this regard. The papers submitted with Bruce's RFO demonstrate that Donna was provided with adequate notice that Bruce was contending that Donna's cohabitation with Todd and the passage of many years' time without Donna demonstrating an attempt to become self-sufficient, justified a

11

modification of his spousal support obligation. For example, in the Judicial Council form portion of the RFO, Bruce requested multiple alternative forms of relief, including termination of the spousal support order, modification of the order, or, if neither of those requests were granted, an order for evaluations and disclosure of efforts to obtain employment.[3] Based solely on the relief Bruce requested, it is apparent that he was not relying on his assertion that Donna had "married" as the sole basis for the RFO; if the only basis for the RFO was that Donna had entered into a marriage, then Bruce would have necessarily been entitled to a termination of his spousal support obligation under the parties' stipulated judgment, and there would have been no need for him to request alternative relief.

In addition, Bruce's attached declaration clarified that Bruce understood that Donna was not officially married, but was contending that her relationship and cohabitation with Todd had changed her circumstances sufficiently to demonstrate that her need for support had decreased. For example, Bruce acknowledged that Donna had "avoid[ed] the legal consequences [of being married] by calling it a 'commitment ceremony'." Although Bruce was suggesting that Donna should be considered to be "married" to another man for purposes of his spousal support obligation, it is clear that Bruce placed her on notice that her relationship with Todd, and the benefits that may have inured to her as a result of her cohabitation with another individual with whom she

---

[3] Bruce also asked for a valuation and division of an omitted retirement asset in Donna's name. The trial court addressed that issue and Donna has not raised any argument on appeal about the trial court's handling of that matter.

12

was involved in a committed romantic relationship, would be at issue in the hearing on Bruce's request to modify the spousal support order. In addition, Bruce provided information about Donna's "new mate" (formatting omitted), including his belief that Donna was "now covered by Todd Catlin's health insurance through [Todd's] employment with the Disneyland Resort." Bruce further asserted that "Donna's standard of living has improved post-divorce," and listed Donna's history of cohabitation with Todd at multiple addresses, including in homes in Oceanside, Anaheim Hills, and Anaheim, California.

Beyond Bruce raising the issue of Donna's reduced need for spousal support based on her relationship and cohabitation with Todd, Bruce also raised the contention that Donna had "disregarded [the *Gavron*] admonition," and had "ma[de] no effort to become self-supporting, except for some seasonal work at Kohl[']s."[4] Bruce also provided information regarding Donna's ability to become self-sufficient, based on her educational background and her work and volunteer history.

Further evidence that Donna was on notice that Bruce was requesting a modification of spousal support based on Donna's cohabitation and her alleged failure to

---

[4]    Bruce also alleged that because Donna had lived in San Diego continuously for 14 years after they moved to San Diego as a result of his military career, she could no longer rely on Bruce's military career as justification for her "failure to hold down steady employment." Rather, he alleged, she "simply chooses not to work – and doesn't have to because she has a new spouse." Although Bruce may have been technically incorrect in referring to Todd as Donna's "new spouse," his reference demonstrated that he believed that Donna's need for support had decreased as a result of her committed relationship and cohabitation with Todd.

13

make reasonable efforts to become self-supporting comes from Donna's declaration, in which she *specifically addressed these two issues*.

In sum, a review of Bruce's RFO establishes that he was relying not only on his contention that Donna's "commitment ceremony" with Todd should cause the court to treat her relationship as if it were a marriage, but also on the broader contention that Donna's living situation had significantly changed because she was now cohabitating with, and had the financial support of, a new romantic partner. Bruce also placed Donna on notice that he was contending that Donna had made no effort to become self-supporting in the time between the entry of the spousal support order and the time of the hearing.

With respect to Donna's contention that the trial court made no finding of a specific change of circumstances sufficient to support the trial court's modification, this argument also provides no basis for reversal of the trial court's order.

Although the court may not have pronounced its findings in the clearest of terms, it is apparent that the court found that at least two material changes in circumstance had occurred by the time of the hearing on Bruce's request to modify spousal support: (1) Donna was cohabitating with a new partner with whom she had engaged in a "commitment ceremony," and (2) in the five-year period since entry of the spousal support order, Donna had not made an attempt to become self-supporting.[5] The record

---

5      The court stated with respect to the first circumstance: "The Court . . . finds it would [be] inequitable to continue the support when Respondent has clearly moved on with her life and is in a real committed relationship with someone else, holding herself

14

supports the trial court's findings, and these changes in circumstance are sufficient to support the trial court's decision to modify the spousal support award.

First, in finding that Donna was "holding herself out to be married" and was in a "real committed relationship with someone else," the trial court was referring to the fact that Donna's circumstances had changed with respect to her need for support. Family Code section 4323, subdivision (a)(1) states that "there is a rebuttable presumption, affecting the burden of proof, of decreased need for spousal support if the supported party is cohabitating with a nonmarital partner." " 'Cohabitation may reduce the need for spousal support because "sharing a household gives rise to economies of scale. [Citation.] Also, more importantly, the cohabitant's income may be available to the obligee spouse." ' " (*In re Marriage of Geraci* (2006) 144 Cal.App.4th 1278, 1298, footnotes omitted.) " '[T]he Legislature created the presumption . . . on thinking that cohabitation . . . creates a change of circumstance so tied in with the payment of spousal support as to be significant enough by itself to require a re-examination of whether such need for support continues in such a way that it still should be charged to the prior spouse.' " (*Id.* at pp. 1298-1299, fn. omitted.)

There is clearly substantial evidence that Donna was, as of the time of Bruce's motion, cohabitating with Todd. In fact, there was evidence, in Donna's Income and

out to be married and as having gone through a wedding on Facebook." With respect to the second circumstance, the court stated: "The Court finds that Petitioner has had more than five (5) years since the parties['] separation on May 12, 2009 to become self-supporting, but has made no effort to obtain additional skills. She has only been working part-time and receiving her share of Respondent's U.S. Navy retirement pay. In the time since the *Gavron* warning until now, Respondent hasn't done what the Court would expect."

Expense Declaration and Todd's declaration, demonstrating that Donna and Todd live together, that they share the cost of rent of their home, and that Todd pays all utilities related to their shared home. Although Donna contended that Todd "has no ability to cover expenses for me, and I therefore 'pay my own way,' " the trial court could rely on the Income and Expense statement provided by Donna, and the information about her shared living arrangement, and determine that Donna's cohabitation with Todd was a significant change in her circumstances, one that reduced her need for support and provided good cause to revisit Bruce's support obligation. In fact, this changed circumstance alone was sufficient to justify the trial court's reduction in Bruce's monthly support obligation to zero.

Nevertheless, Donna posits that to the extent the trial court may have relied on her cohabitation with Todd, this was error because the parties intended the "deletion [of cohabitation as a factor justifying termination of jurisdiction over spousal support from the parties' stipulated judgment] to have the legal effect of removing cohabitation as a potential changed circumstance." She argues that it therefore "follows that the normal presumption of 'reduced need' based upon cohabitation should not be applied in the instant case."

The stipulated judgment provides: "The spousal support payments required by . . . Section 2.1 shall cease to be due on the earliest of the death of Respondent, the death of Petitioner, the remarriage of Petitioner, Petitioner's entry into a registered domestic partnership under California law, or the equivalent under the law of any other jurisdiction, or further Court order." The comma and the words "or further Court order"

16

are hand written in the document.  The document includes lining out of the following language that followed immediately after "under the law of any other jurisdiction, . . .":

> "~~the cohabitation by Petitioner with another adult unrelated person, or further Court order.  For purposes of terminating support, cohabitation with another person shall mean Petitioner residing with another person of the opposite sex for more than thirty (30) consecutive or nonconsecutive days in a sexual, romantic, or homemaker-companion relationship, regardless of whether they hold themselves out as married~~."

By lining out the above language, the parties removed Donna's cohabitation from the list of possible circumstances that would cause the *termination* of Bruce's spousal support obligation.  We disagree with Donna's suggestion that the parties intended that the deletion of this language would have the additional effect of preventing the court from considering Donna's cohabitation as a changed circumstance related to Donna's need for support.

The language of the stipulated judgment is referring to particular events that, by their occurrence, would *automatically* extinguish Bruce's obligation to pay any spousal support.  We do not interpret the parties' decision to remove cohabitation from this list, a list of events that trigger the complete extinguishment of any further support obligation, as also eliminating cohabitation as a factor that the court could consider in modifying the spousal support award.  Rather, the deletion of cohabitation from this list was more likely intended to eliminate a potentially harsh result (i.e., the complete termination of any further support, without the possibility of a beneficial modification of support for Donna in the future, based on a casual cohabitation situation that lasted just over 30 days), in favor of permitting a court to consider the circumstances such as Donna's cohabitation

17

with Todd and whether cohabitation of that nature reduced Donna's need for support from Bruce.[6] We therefore reject Donna's contention that "[p]resumably, the parties intended that deletion to have the legal effect of removing cohabitation as a potential changed circumstance." The court therefore acted reasonably in applying the presumption of reduced need based upon cohabitation in this case.

The court also relied on Donna's failure to make any "effort to obtain additional skills," the fact that she has "only been working part-time," and, despite having been provided a *Gavron* warning, she had not "done what the Court would expect" with respect to becoming self-sufficient. "A trial court acts within its discretion in denying spousal support where the supported spouse has failed to diligently seek employment sufficient to become self-supporting." (*In re Marriage of Shaughnessy* (2006) 139 Cal.App.4th 1225, 1238 (*Shaughnessy*); see also *In re Marriage of Rosan* (1972) 24 Cal.App.3d 885, 896 ["When evidence exists that the party to be supported has unreasonably delayed or refused to seek employment consistent with her or his ability . . . that factor may be taken into consideration by the trial court in fixing the amount of support in the first instance or in modification proceedings"].) " 'Whether

---

6       For example, under the court's current order, the court retains jurisdiction over spousal support between the parties, and in the event that Donna ceases cohabitating with Todd, she is not prevented from requesting a modification of the current support amount in view of that material change of circumstance. (See Fam. Code, section 4323, subd. (c) ["Nothing in this section [regarding the presumption of decreased need based on cohabitation] precludes later modification or termination of spousal support on proof of change of circumstances"].) However, if cohabitation had remained as an event that would trigger the extinguishment of Bruce's support obligation entirely, Donna would have no ability to seek a modification of the support order in the future if her cohabitation were to end.

there has been such unreasonable delay [in seeking employment] is a question addressed peculiarly to the trial court which heard the party's testimony and observed the party's demeanor at trial.' [Citation.] There is no requirement that the failure to exercise diligence in seeking gainful employment has been in bad faith." (*Shaughnessy*, *supra*, at p. 1238.)

Donna's own declaration demonstrated her lack of efforts to become more gainfully employed. In her declaration, Donna asserted she has "worked to the best of [her] ability," but that so far she has "only been able to secure seasonal work." Donna states, "I was out of the job market for much of our marriage, and was not able to develop 'career' skills. Further, nothing has changed since separation that has improved my earning capacity. I am fifty-two (52) years old, and in good health, but my resume does not command high salaries in the current market." Donna's statements are notable for what is absent from them. She does not attest to having applied for numerous jobs and having been rejected, nor does she attest to having applied for *any* job and being rejected; the trial court could rightly infer that Donna had not put forth reasonable effort to try to find anything other than seasonal employment. Donna also contends that "nothing has changed since separation" to "improve[ ]" her earning capacity. However, the things that could have "changed since separation" to "improve[ ]" Donna's earning capacity were largely within Donna's control. For example, Donna does not state that she took classes or engaged in other job-skills preparation during the five-year period since she was given the *Gavron* warning. The trial court could reasonably infer from Donna's declaration that

19

she *had not attempted to improve her employment skill set* in the intervening time.[7] Further, Donna's reference to her resume "not command[ing] high salaries in the current market" suggests that Donna was not adequately considering lower salaried job opportunities. Donna was not expected to earn a "high" salary; rather, as the court noted, the court expected Donna to make reasonable efforts to find regular employment and work toward becoming self-sufficient.

Donna was given notice that she was expected to make the effort to become self-supporting through the *Gavron* warning included in the parties' stipulated judgment. "Inherent in the concept that the supported spouse's failure to at least make good-faith efforts to become self-sufficient can constitute a change in circumstances which could warrant a modification in spousal support is the premise that the supported spouse be made aware of the obligation to become self-supporting." (*Gavron*, *supra*, 203 Cal.App.3d at p. 712.) Donna was told that "[t]he failure to make reasonable good faith efforts [to become self-supporting] may be one of the factors considered by the Court as a basis for modifying or terminating support," and she was notified that she had "a duty to contribute to her own support." Donna presented no evidence that she was contributing to her own support, or that she had made "reasonable good faith efforts" to become self-supporting. The absence of any evidence that Donna had made reasonable efforts to

---

7      The trial court even addressed this issue during oral argument, in response to Donna's contention that she did not have "the money to [obtain additional schooling to improve her skills]," stating: "But you have had, you've had $4,000 a month for five years," and "Ma'am, there's all kind of classes you can take with very little money."

20

become self-supporting is sufficient to support the trial court's finding that Donna was not meeting her obligation to make reasonable efforts to become-self-supporting.

We conclude that Donna was provided sufficient notice of the material changes in circumstances on which Bruce was relying in seeking a modification of the spousal support award. We further conclude that, contrary to Donna's contention, the trial court did find material changes of circumstances sufficient to justify the court's modification of the spousal support order.

C.     *Donna forfeited her contention that the court failed to consider and weigh the factors set forth in Family Code section 4320; in any event, her contention is without merit*

Donna contends that the order should be reversed because "the trial judge did not comply with the statutory requirement of considering, weighing, and applying all of the factors set forth in Family Code section 4320." (Formatting omitted.)

As an initial matter, we note that Donna did not raise this issue in the trial court nor did she request that the trial court provide additional analysis of the Family Code section 4320 factors.

Generally, the failure to raise an issue in the trial court forfeits that issue for appellate review. (*People v. Saunders* (1993) 5 Cal.4th 580, 589.) The purpose of the rule is to provide the trial court with an opportunity to rule on the issue. (*Performance Plastering v. Richmond American Homes of California, Inc*. (2007) 153 CalApp.4th 659, 668, fn. 3.) " 'Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider. [Citation.] In our adversarial system, each party has the

21

obligation to raise any issue or infirmity that might subject the ensuing judgment to attack. . . .' " (*Kashmiri v. Regents of University of California* (2007) 156 Cal.App.4th 809, 830.)  A contrary rule would encourage parties to remain silent in the trial court, hoping for reversal on appeal.

At the hearing, when the trial court stated its ruling regarding Bruce's request to modify spousal support, including the court's statement that it would incorporate "the prior 4320s" from the parties' stipulated judgment, Donna failed to raise any concern with the court's approach.  Had she done so, the court could have addressed her concerns and more fully articulated its consideration of the relevant factors.  However, Donna did nothing, and instead allowed the court to make its ruling without registering any objection.  Donna's failure to raise this issue with the trial court at a time when the trial court could have addressed her concerns forfeits this contention on appeal.

However, even on its merits, Donna's contention is flawed.  Donna asserts that Family Code section 4320 mandates the consideration of each of the factors.  Although the statute does state that the trial court "shall consider" the listed factors, the statute does not require that the court make specific findings with respect to each one of the individual factors or that the court specifically note that it has taken each one of the factors into consideration.  Rather, the court is required to "consider and weigh all of the circumstances enumerated in the statute, *to the extent they are relevant to the case before it*." (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 302, fn. omitted, italics added.)

Not every factor was relevant to the case before the court.[8]  Further, there is no rule that holds that the absence of a discussion of a Family Code section 4320 factor demonstrates that the trial court failed to consider the factor; courts can "consider" matters without discussing them in a written ruling.  (See *Gonzales v. Interinsurance Exchange* (1978) 84 Cal.App.3d 58, 63 ["consider" means to view attentively; to fix the mind on, with a view of careful examination; to think on with care; to ponder].)  Thus, the mere lack of express findings as to each factor listed in Family Code section 4320 is insufficient to demonstrate that the court abused its discretion.

Further, the trial court was considering a motion to modify spousal support, based on certain limited grounds—i.e., the asserted changes in Donna's circumstances.  The court adequately addressed these changed circumstances in its ruling.  In 2010, the trial court relied on the parties' stipulation with respect to the other factors—a stipulation in which the parties agreed that Bruce would be obligated to pay Donna a certain amount in spousal support.  In the stipulation, the parties themselves stated *that they had both considered the Family Code section 4320 factors in reaching the $4,000 per month figure*.  Although the stipulated judgment does not list any "findings" regarding these factors, it is clear that Donna and Bruce both acknowledged that they had "considered" the appropriate factors.  The trial court was justified in relying on the parties' stipulation that they had considered the relevant factors in determining that $4,000 per month would

---

8       For example, subdivision (m) of Family Code section 4320 refers to "[t]he criminal conviction of an abusive spouse" being considered.  In this case, where there is no evidence of either party having a criminal conviction, there is simply no need for the trial court to expressly note that it considered this factor.

be sufficient to maintain Donna in the standard of living established during the marriage when it entered as the court's judgment the stipulated agreement submitted by the parties.

In 2014, when Bruce sought modification, the only changes to any of the relevant Family Code section 4320 factors that either party raised were the two grounds that the trial court expressly addressed—i.e., Donna's cohabitation with Todd and the passage of time without evidence that Donna had made reasonable efforts to become self-supporting. It was enough for the trial court to explicitly address the two points presented in Bruce's RFO as constituting material changes of circumstances where there was no allegation that there was any change with regard to any of the other factors listed in Family Code section 4320.

D.      *No abuse of discretion has been demonstrated on the ground that the court's order "leaves the parties at significantly different standards of living"*

Donna's final argument is that the trial court's order constitutes an abuse of discretion because it "leaves the parties at significantly different standards of living." (Formatting omitted.) The problem with Donna's contention is that there is evidence to demonstrate that she agreed, in 2010, that $4,000 per month met her reasonable needs consistent with the "middle class" standard of living that had been established during the marriage. Thus, the trial court could reasonably conclude that if Donna had the ability to have her needs met in ways apart from Bruce's support payment, then she could continue living in a manner consistent with the "middle class" standard to which she agreed she was entitled without the support payment. There is evidence in the record to support the trial court's determination that Donna could have her need for approximately $4,000 a

24

month met in ways apart from spousal support. Again, Donna now shares rent on a single family home (as opposed to a one-bedroom apartment, as acknowledged by Donna's attorney at the hearing on the matter), Todd pays the utilities for their shared home, and Donna stated that approximately $1,747 of her monthly expenses are paid for by others. In addition, although the court did not impute a certain income to Donna, it is clear that the court believed that Donna has the ability to earn some income on a regular basis, even if she works only part time and for minimum wage. The evidence supports the conclusion that if Donna makes reasonable efforts to support herself, she will be able to make up for some portion of the spousal support that she is no longer receiving; indeed, Donna reported that she was able to earn approximately $400 per month in November and December 2013 with part-time employment. We cannot conclude that the trial court significantly altered Donna's standard of living from a "middle class" standard; the evidence supports the conclusion that Donna's standard of living can remain sufficiently similar to the standard of living to which she agreed she was entitled in 2010, even with a reduction in her spousal support to zero.[9] Donna has demonstrated no abuse of discretion in this aspect of the trial court's ruling.

_____

[9]    To the extent that Donna is now arguing that she is entitled to a higher standard of living because her standard of living is not sufficiently equivalent to Bruce's standard of living, such an argument was waived when Donna agreed to the terms of the stipulated judgment. Donna agreed that the "middle class" standard of living is the standard of living to which she was entitled based on the standard of living established during her marriage to Bruce; she cannot now complain that such a standard of living differs dramatically from Bruce's standard of living. Thus, as long as there is evidence in the record to demonstrate that Donna will continue to have a "middle class" standard of living even after the reduction in her spousal support, then there can be no abuse of

25

## IV.

## DISPOSITION

The order of the trial court is affirmed.  Respondent is entitled to costs.

AARON, J.

WE CONCUR:

McCONNELL, P. J.

McDONALD, J.

---

discretion with respect to the parties' purportedly differing standards of living at this point in time.