Filed 5/24/23  Marriage of Sanchez CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re the Marriage of CARMEN PYRAH SANCHEZ and MICHAEL REY SANCHEZ. | B316456 (Los Angeles County Super. Ct. No. 18STFL03404) |
| CARMEN PYRAH SANCHEZ, Appellant, v. MICHAEL REY SANCHEZ, Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark A. Juhas, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Jeff Lewis Law, Jeffrey Lewis and Sean C. Rotstan for Appellant.

Law Office of Herb Fox and Herb Fox for Respondent.

Carmen Pyrah Sanchez appeals from a judgment dissolving her marriage to respondent Michael Rey Sanchez.  Carmen[1] argues the family law court erred by denying her request for a statement of decision, that the court's findings were unsupported by the evidence, and that a ruling on a debt owed to the person who staged the family home for sale was a separate property issue beyond the scope of the court's jurisdiction.

We agree the family law court erred by not issuing a statement of decision regarding its denial of Carmen's request for the return of certain intimate photographs and videos, for which the court offered no explanation in either its tentative decision or its final judgment.  Carmen otherwise fails to show prejudice from the absence of a statement of decision as to any other issue, or that the court's findings were not supported by the evidence.  We reject Carmen's jurisdictional argument for lack of citation to evidence in the record or legal authority.

Accordingly, we affirm in part, reverse in part, and remand.

## BACKGROUND

Carmen and Michael married in 2004.  They have two children, born in 2007 and 2013.  They separated in 2017.  Carmen petitioned for divorce on March 19, 2018.

Following trial, the family law court issued an approximately 15-page written ruling on June 10, 2021 addressing matters taken under submission, including child custody, child and spousal support, division of property, and

---

[1] We will refer to the parties by first name for clarity, not out of familiarity or disrespect.  (See *In re Marriage of Schaffer* (1999) 69 Cal.App.4th 801, 803, fn. 2.)

other matters.[2]  We summarize only the rulings challenged in this appeal, and provide more detail on those rulings in the relevant sections of our Discussion, *post*.

The court awarded Carmen spousal support beginning at $5,000 per month, gradually reduced to zero by June 1, 2027. The court granted Michael's request under Family Code[3] section 2640 for reimbursement for his separate property contributions to the purchase of the family home, and further characterized as his separate property his contributions to a 401(k) account made before marriage and after separation.  The court attributed to Carmen any debt due to the person that staged the family home for sale, because the court found Carmen had the missing staging items.

The family law court did not rule expressly on a pocket brief Carmen filed on the day of closing arguments, May 27, 2021, in which she requested that Michael return all photographs and videos in his possession of Carmen "in any state of undress." Rather, the court's ruling stated, "All other requests, unless specifically addressed in this or the April 2, 2021 ruling are specifically denied."

On June 18, 2021, Carmen filed a request for a statement of decision under Code of Civil Procedure section 632.  The request, an eight-page document, consisted of underlined headings listing the general topics Carmen wished addressed, with most headings followed by a detailed list of requests for

---

[2]  In addition to deciding the submitted matters, the trial court's ruling incorporated previous rulings reflected in an earlier April 2, 2021 minute order.  The rulings from the April 2 minute order are not at issue in this appeal.

[3]  Undesignated statutory citations are to the Family Code.

findings and legal authorities pertaining to each topic.  Among the topics on which Carmen sought a statement of decision were the spousal support award, Michael's section 2640 reimbursement claims on the proceeds of the sale of the family residence, his separate property claims on the 401(k) account, and Carmen's request for the return of the photographs and videos of her.

Four days later, on June 22, 2021, before the family law court had taken any action on Carmen's request for a statement of decision, Carmen filed objections to, and a request for clarification of the court's June 10, 2021 written decision.  Four pages of the filing consisted of Carmen's objections to the court's section 2640 reimbursement to Michael for his separate property contributions to the family home.  She argued Michael's reimbursement request was untimely, the court improperly placed the burden on the community to perform an accounting or record tracing, and the court ignored applicable community property presumptions.  Carmen similarly argued Michael had failed adequately to trace the separate property he purportedly contributed to the retirement accounts.  Carmen also contended, inter alia, the family law court exceeded its jurisdiction in attributing the debt from the staging company to her, and that the court's order gradually reducing her spousal support over time was based on speculation rather than evidence.

On June 25, 2021, the family law court issued a minute order denying Carmen's request for a statement of decision.  The court first found the request was "untimely," because the June 10, 2021 decision "was a final ruling, not a tentative decision."  Additionally, the court found the request was "essentially seven and ½ pages of interrogatories," and the court

4

was "not obligated to answer open ended questions concerning 'all factual and evidentiary findings and legal authorities' concerning each and every issue in the case." The court stated its June 10, 2021 decision "sets forth in detail its reasoning; the Court has little to add." The court stated it had read and noted Carmen's objections filed June 22, 2021, but did not comment further on them.

The family law court entered judgment on September 7, 2021. The judgment is lengthy and detailed, and on the matters at issue in this appeal largely mirrors the language from the court's June 10, 2021 ruling. The judgment, like the June 10, 2021 ruling, does not expressly address Carmen's request for the return of the photographs and videos of her.

Carmen timely appealed from the judgment.

## DISCUSSION

On appeal, Carmen contends the family law court erred by failing to grant her request for a statement of decision on "four material issues": (1) Michael's section 2460 claim regarding the family home; (2) Michael's separate property claim on the 401(k) account; (3) the spousal support award; and (4) Carmen's request for the return of intimate photographs and videos. She also challenges the sufficiency of the evidence as to the first three of these "material issues." Finally, she argues the family law court lacked jurisdiction to impose on Carmen the debt owed to the stager. We agree Carmen is entitled to a statement of decision regarding the photographs and videos, but otherwise reject her challenges.

5

## A. The Denial of a Statement of Decision Regarding the Photographs and Videos Was Prejudicial Error

We begin with Carmen's challenge regarding the photographs and videos.

Code of Civil Procedure section 632 provides, "[U]pon the request of any party appearing at the trial," the trial court "shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial." Generally, a request for a statement of decision "must be made within 10 days after the court announces a tentative decision." (See *ibid.*)

As discussed, Carmen filed a timely request for a statement of decision on June 18, 2021, eight days after the family law court announced its ruling on June 10, 2021. One of the underlined headings in that request was entitled "Sensitive Photographs/Videos," and cited Carmen's May 27, 2021 pocket brief seeking the return of those photographs and videos. Carmen asked for a statement of decision addressing "[a]ll factual and evidentiary findings and legal authorities relied upon by the Court in denying Carmen's request that all photographs and videos that depict her in any state of undress taken of her by Michael, with or without her knowledge, during marriage should be awarded to her, with Michael keeping no copies, and further enjoining Michael from disseminating copies of any such photographs and videos." Under Code of Civil Procedure section 632, Carmen was entitled to a statement of decision on this issue.

Failure to issue a requested statement of decision does not require reversal unless the appellant can show prejudice. (See *F.P. v. Monier* (2017) 3 Cal.5th 1099, 1108 ["a trial court's error

6

in failing to issue a requested statement of decision is not reversible per se, but is subject to harmless error review"].) Here, there was prejudice. A statement of decision "provides us with the trial court's reasoning on disputed issues and 'is our touchstone to determine whether or not the trial court's decision is supported by the facts and the law.' [Citation.]" (*In re Marriage of Starr* (2010) 189 Cal.App.4th 277, 287.) The family law court deprived Carmen of that " 'touchstone' " on the issue of the photographs and video. The court did not otherwise provide that touchstone in its June 10 decision or final judgment, neither of which expressly addressed the issue of the photographs and video.[4]

We recognize that the family law court found Carmen's request for a statement of decision untimely, reasoning that the court's June 10 decision was "final," not "tentative." (See Code Civ. Proc., § 632 [request for statement of decision must be made within 10 days of "tentative" ruling].) This was error. Because

---

[4] The family law court briefly addressed the photographs and videos orally when Carmen's counsel raised the issue during closing argument. Carmen's counsel requested, as had Carmen's pocket brief filed that same day, that Michael return the photographs and videos to Carmen, and that the court enjoin Michael from disseminating any copies to anyone else. The court stated, "I don't have an ability to enjoin him from doing anything, because there's no evidence he has done anything. And this is the first I've heard of this request to return these things." The court suggested Carmen's counsel speak with Michael's counsel and "work something out." Carmen's counsel stated, "We saw one," and referred to a particular photograph of Carmen that Michael purportedly showed his girlfriend. The court responded, "I didn't see it."

7

the court had yet to enter judgment, its June 10 decision was still subject to modification, and properly could have been characterized as tentative for purposes of Code of Civil Procedure section 632.  (See *Horning v. Shilberg* (2005) 130 Cal.App.4th 197, 203 ["Until entry of judgment, the court may vacate or change a previously rendered verdict as it sees fit."].)

The Rules of Court also preclude the family law court from issuing a final decision without first providing a tentative decision and allowing the parties an opportunity to request a statement of decision.  (See California Rules of Court,[5] rule 3.1590(a) ["On the trial of a question of fact by the court, the court must announce its tentative decision"]; *id.*, rule 3.1590(d) [party may request statement of decision within 10 days of tentative decision].)  The record does not indicate that the family law court provided an oral or written tentative decision on the matters at issue in this appeal prior to the June 10 ruling.  Thus, under the Rules of Court, the June 10 ruling was a tentative decision, and Carmen's request for a statement of decision was timely.

Michael concedes Carmen's request was timely, but argues the family law court properly denied the request "because of its burdensome and improper interrogation style and [Carmen's] failure to propose suitable dispositions of the issues."  Michael cites, inter alia, *In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, which held improper a request for a statement of decision that was "a laundry list of 52 demands" "rather than a request for the legal/factual basis for the trial

---

[5] Further undesignated rule citations are to the California Rules of Court.

court's decision on the principal controverted issues." (*Id.* at p. 981.)

We need not address the merits of Michael's argument as to Carmen's request for a statement of decision as a whole, which the family law court similarly characterized as "a set of interrogatories to the Court." Unlike some of the other portions of Carmen's request for a statement of decision, which were lengthy and included numerous subparts, the portion regarding the photographs and videos was brief and straightforward, asking the family law court for the factual and legal basis of its denial of the relief sought in Carmen's May 27, 2021 pocket brief. We see nothing inappropriate about this request, nor would have responding to it have been unduly burdensome.

We therefore reverse the judgment insofar as it denies the relief requested in the May 27, 2021 pocket brief, and remand to the family law court to prepare a statement of decision on that issue. The family law court shall follow the procedures in rule 3.1590, including providing the parties an opportunity to object to the statement of decision. (Rule 3.1590(g).) In directing the family law court to prepare a statement of decision, we do not suggest that the family law court must provide, as Carmen requested, "*All* factual and evidentiary findings and legal authorities" pertinent to the court's decision as to photographs and videos. (Italics added.) "A court's statement of decision need not respond to every point raised by a party or make an express finding of fact on each contested factual matter; it need only dispose of all basic issues and fairly disclose the court's determination as to ultimate facts and material issues in the case." (*Duarte Nursery, Inc. v. California Grape Rootstock Improvement Com.* (2015) 239 Cal.App.4th 1000, 1012.)

**B.** **Carmen Fails To Show Prejudice From the Absence of a Statement of Decision Regarding Michael's Section 2640 Claim on the Family Home, and Her Arguments Concerning Sufficiency of the Evidence Are Irrelevant**

In contrast to the issue of the photographs and video, we conclude Carmen has not demonstrated prejudice from the family law court's failure to issue a statement of decision regarding Michael's section 2640 claim on the proceeds of the sale of the family home. We also reject her challenges to the sufficiency of the evidence.

### 1. *Relevant background*

Prior to his marriage to Carmen, Michael owned a residence on Loadstone Drive.[6] After they married, Michael and Carmen lived for approximately 18 months in the Loadstone home until they purchased a new home on Sunstone Place. Michael testified he never changed the Loadstone deed to include Carmen, and therefore it remained in his name even after marriage. Michael further testified that he obtained a refinance loan on Loadstone, and used approximately $350,000 of that loan to pay the down payment for the Sunstone property. His trial brief recited he contributed $370,748 to that down payment. Michael sought reimbursement of that amount from the sales proceeds of the Sunstone property pursuant to section 2640.

The family law court granted Michael's reimbursement request. In the June 10, 2021 ruling, the court stated, "The

---

[6] In the reporter's transcript and elsewhere in the record, the street is erroneously spelled as "Lodestone."

10

evidence demonstrates that [Michael] purchased Lo[ad]stone pre-marriage. The evidence supports that the down payment of $370,345 for Sunstone came from the Lo[ad]stone refinance. [Michael] will receive his Family Code 2640 claim against the Sunstone sale."

In her request for a statement of decision Carmen asked for the factual and evidentiary findings and legal authorities relied upon by the family law court in resolving Michael's section 2640 claim, and asked the court specifically to address the burden of proof, tracing, apportionment, and application of community property presumptions. In her objections to the June 10, 2021 ruling, Carmen argued, inter alia, that Michael had failed to perform the necessary record tracing to establish his separate property interest in the Loadstone home and the refinance loan proceeds, and the court wrongly concluded it was her burden, not Michael's, to do so. Carmen further argued the court ignored the statutory presumption that the Loadstone loan proceeds were community property.

As discussed, the trial court denied Carmen's request for a statement of decision. The final judgment read similarly to the June 10 ruling, stating, "The evidence demonstrates that [Michael] purchased Loadstone before marriage and supports a finding that the down payment of $370,345 for Sunstone came from the Loadstone refinance, which was [Michael's] separate property. [Michael] will receive a Family Code 2640 claim against the Sunstone sale proceeds." (Italics omitted.)

It is not clear why the reimbursement ordered by the court differs from the amount requested by Michael by $403, but Carmen concedes the specific amount awarded is not material to this appeal.

11

### 2. *Analysis*

Section 2640 provides, in relevant part, "In the division of the community estate . . . , [a] party shall be reimbursed for the party's contributions to the acquisition of property of the community property estate to the extent the party traces the contributions to a separate property source." (§ 2640, subd. (b).) " 'Contributions to the acquisition of property' . . . include downpayments . . . ." (*Id.*, subd. (a).) Under this provision, the family law court awarded Michael reimbursement for the amount the court found Michael had contributed to the Sunstone down payment from his separate property, that is, the refinance proceeds from Loadstone.

On appeal, Carmen does not reassert her argument below that the family law court's ruling failed to recognize that Michael had not established through record tracing that Loadstone and the proceeds from the Loadstone refinance were his separate property. Rather, she argues that the family law court's ruling did not discuss adequately whether Michael had established any separate property interest in the *Sunstone* home by virtue of using his separate property to pay the mortgage or fund home improvements on Sunstone.

Carmen states in her opening brief, for example, that the family law court's ruling "does not address the monthly mortgage payments made from community funds over a decade nor the apportionment of value at the marriage end of the community versus separate interest in the [Sunstone] property." Later in her brief, she states, "No evidence was offered at trial to suggest that during the marriage, Michael exclusively used a separate property income source to pay the Sunstone mortgage or improve the Sunstone property," and "it was Michael's burden . . . to rebut

12

the presumption that Sunstone property mortgage payments for over a decade were made from a separate property source." Carmen objects that the family law court did not require Michael to conduct a *Moore/Marsden* analysis[7] "to allocate the relative community and separate interests in the value of the [Sunstone] home at the end of the marriage." Carmen argues, "The practical effect of the June 10, 2021 order was to place the burden of proof on Carmen or the community, rather than Michael, to rebut the presumption that Sunstone was a community asset." Carmen makes similar arguments in her reply brief, stating, "Neither the trial court's intended ruling nor the ultimate judgment disclosed the character of the monthly payments to pay the Sunstone mortgage or to improve the property."

Carmen's argument on appeal misapprehends the basis both of Michael's section 2640 claim and the family law court's ruling on that claim. Michael did not claim to have used separate property funds to pay the Sunstone mortgage or improve the property such as to have a separate property interest in Sunstone. Nor did the family law court rule that Sunstone was not a community asset.

---

[7] When the marital community pays the mortgage on a spouse's separate real property, the *Moore/Marsden* rule "provides a formula through which to apportion the property's value upon the marriage's end," recognizing that the marital community has "a growing interest in the otherwise separate property as community funds are used to increase the property's equity." (*In re Marriage of Mohler* (2020) 47 Cal.App.5th 788, 790.) The rule is attributed to *In re Marriage of Moore* (1980) 28 Cal.3d 366 and *In re Marriage of Marsden* (1982) 130 Cal.App.3d 426.) (*Marriage of Mohler*, at pp. 791–793.)

Michael's section 2640 claim was simply for reimbursement of separate property funds contributed towards the Sunstone down payment. Neither that claim, nor the family law court's ruling, had anything to do with separate property funds expended after Sunstone was purchased. Michael's purported failure to prove he contributed to the Sunstone mortgage or home improvements with separate property is thus irrelevant, as is the family law court's purported failure to address that issue in a statement of decision. Put another way, Carmen cannot show prejudice from a failure to address in a statement of decision a claim Michael did not assert.

To the extent Carmen challenges the inadequacy of Michael's record tracing concerning the Loadstone refinance,[8] and the absence of a statement of decision on that subject, she attributes no prejudice to those failures other than, as noted above, misapprehending that the family law court found that Michael had contributed separate property funds towards Sunstone mortgage payments and improvements. Because Michael never requested such a finding and the family law court in fact made no such finding, Carmen shows no prejudice, and her challenge on that basis fails.

Carmen's challenge to the sufficiency of the evidence in support of the section 2640 claim fails for similar reasons.

---

[8] In a footnote in her opening brief's statement of facts, Carmen states Michael's testimony was "murky" regarding whether the Loadstone refinance proceeds were his separate property, and "[n]o tracing of the [loan proceeds] was offered by expert or lay testimony." Carmen also notes her accountant expert's testimony that Michael's separate property claim to Loadstone was " 'unsupported.' "

Carmen argues, "[T]here was no meaningful evidence offered below as to [the] source of the monthly mortgage payments made over a decade," that "decade" referring to the approximately 10 years Michael and Carmen lived in the Sunstone home. She further claims Michael failed to calculate "the relative community and separate property shares of the Sunstone property at the end of the marriage." Again, Carmen challenges the evidence in support of a claim Michael never made, and on which the family law court never ruled. Her misapprehension of the basis of Michael's claim and the family law court's ruling is fatal to that challenge.

### C.  Carmen Fails To Show Prejudice From the Absence of a Statement of Decision Regarding Michael's Separate Property Claim on the 401(k) Account, or That the Ruling on the Claim Was Not Supported By Substantial Evidence

Carmen similarly fails to show prejudice to the extent the family law court did not provide a statement of decision regarding Michael's separate property interests in the 401(k) account. Nor does she establish that the court's ruling on that issue was not supported by substantial evidence.

#### 1.  *Relevant background*

At trial, Michael testified that before he was married, he contributed approximately $147,000 to a 401(k) retirement account that he later rolled into a Merrill Lynch account. He further testified that after he separated from Carmen, he contributed an additional $42,500 to the Merrill Lynch account. In its June 10, 2021 ruling, the family law court stated, "[Michael] carried his burden of proof as to the separate property

15

component in the 401(K); [Michael] will receive a credit for $147,336.66 in pre-marriage contributions and $42,500 in post-separation contributions without appreciation."

In her request for a statement of decision, Carmen asked the court to address the separate property findings as to the 401(k) account, including the burden of proof, tracing, apportionment, and any applicable community property presumptions. In her objections to the June 10, 2021 ruling, Carmen stated Michael had failed, inter alia, to produce records tracing the amount in the 401(k) attributable to pre-marriage contributions, and failed to apportion the market increases and decreases in the intervening years.

In its final judgment, the family law court stated, similar to the language in the June 10, 2021 ruling, that "[Michael] carried his burden of proof as to the separate property component in the [401(k) account] and will receive a credit for $147,336.66 in pre-marriage contributions and $42,500 in post-separation contributions, without appreciation, for a total of $189,837."

### 2. *Analysis*

Carmen argues the family law court's statement that Michael "carried his burden" regarding the 401(k) account was conclusory and inadequate to "assist this reviewing Court as to how the trial court reached those numbers and the allocation and tracing required to be done for payments made during the marriage."

We are unclear, and Carmen does not explain, what sort of tracing and allocation was necessary. Michael was not making a claim for "payments made during the marriage," in Carmen's words, or even for the appreciation of his premarriage contributions during marriage, which appreciation the family law

16

court did not award him. He only sought the money he put into the account before marriage and after separation, the amounts of which he provided through his testimony. Although Carmen invokes the terms "tracing" and "allocation," she cites no authority and offers no argument that the family law court could not rely on Michael's testimony.

Given the straightforward nature of this issue—at least in the absence of authority or argument from Carmen indicating it is more complex than it seems—we fail to see what prejudice Carmen suffered from the family law court not providing more detail regarding the 401(k) account in a statement of decision.

As to her challenge to the sufficiency of the evidence in support of the ruling on the 401(k) account, Carmen argues, "[N]o testimony was offered suggesting that [the] contributions [to the 401(k) account] during marriage came from a non-community income or property source." Again, Michael did not claim any separate property right to contributions made during marriage, but instead, only to contributions made premarriage and postseparation. Therefore there was no need for him to offer evidence concerning the source of the contributions during marriage.

**D.    Carmen Fails To Show Prejudice From the Absence of a Statement of Decision Regarding the Spousal Support Award, or That the Ruling on the Claim Was Based on Unsupported Speculation**

We reject Carmen's arguments that she was prejudiced by an absence of a statement of decision regarding the spousal support award, or that the family law court based that award on unsupported speculation.

17

### 1.  *Relevant background*

Michael is an anesthesiologist.  Carmen is a nurse. Carmen stopped working in 2013 when their second child was born.  In 2020, two and a half years after the couple separated, she resumed working as a nurse.

The family law court devoted approximately three and a half pages of its June 10, 2021 ruling to the subject of spousal support.[9]  We summarize the portions of that ruling relevant to Carmen's arguments on appeal.

The family law court first found the marriage was "a statutorily long-term marriage of 13 years."  Carmen was in her mid-40's, "in good health and able to be gainfully employed."  The court acknowledged Carmen had not worked during the last four years of marriage to care for the children, and COVID-19 "may have created a situation where she needed to be closer to home for the children."  The children were set to resume a normal school schedule in the fall, and thus Carmen's "on-going employment will not interfere with the interests of the children."

In determining the marital standard of living, the family law court noted the parties' standard—calculated by Carmen as income of $51,000 per month—was "inappropriately elevated" because they had paid insufficient taxes for several years. Although "the family made a significant amount of money, their expenses were great," including $60,000 a year for their children's tuition, and a monthly house payment of $7,000.  The family "did not take numerous luxurious family vacations, nor did they drive expensive foreign cars."  "[A]ccounting for taxes,

---

[9]  The parties stipulated Michael would pay $6,000 per month in child support.

the Court finds that they would have enjoyed a slightly lesser, but nevertheless upper middle-class lifestyle." Adjusting Carmen's numbers to account for the unpaid taxes, the court concluded the monthly family income was $34,000.

Turning to Carmen's ability to support herself and the children, the family law court noted evidence that beginning in April 2020, Carmen was working on average 20 hours a week at $40 per hour, although her actual pay rate ranged from $20 to $70 per hour, and her actual hours varied from less than 10 hours to 30 hours a week, with most weeks being 10 hours or less.

The family law court found that the children were now in school full time, and therefore Carmen could work more hours, "either with her current employer or with another employer." The court declined to "immediately impute an income to [Carmen]," but would do so as of June 1, 2022, thus "giv[ing] her an additional 12 months to seek, find and maintain work." The court found Carmen could achieve an annual salary of $60,000 assuming 30 hours a week at her current stated rate of pay of $40 an hour.

The family law court calculated that out of the tax-corrected family income of $34,000, the children absorbed all but $11,600 of that, including tuition. This left "roughly $6,000 for [Carmen]." The court awarded Carmen monthly spousal support of $5,000 from June 1, 2021 to May 31, 2023, reduced to $3,000 from June 1, 2023 to May 31, 2027. Carmen would receive no further spousal support from June 1, 2027 onward. The court stated, "These amounts are designed to allow [Carmen] to get on her feet with her employment and reach her income potential.

Further, even at her current income level, these amounts will virtually meet the marital standard."

As noted earlier, Carmen requested a statement of decision regarding the spousal support award, among other topics. As to that award, Carmen requested a statement of decision addressing "All factual and evidentiary findings and legal authorities relied upon by the Court in its determination of Carmen's request for permanent spousal support," including, inter alia, "the contributions, plight and impact of divorce and COVID-19 on Carmen as a displaced homemaker and primary care provider for the minor children," "Carmen's earning capacity, including but not limited to the Court's imputation of income to Carmen on June 1, 2022," "the marital standard of living," "Michael's ability to pay spousal support," "the obligations and assets of the parties, including Michael's separate property," and "the balance of the hardships to each party, as impacted by Michael's exclusive management, inaccurate reporting and underpayment of community income tax liabilities."

Also, as noted earlier, in her written objections to the June 10, 2021 ruling, Carmen challenged the family law court's spousal support calculations, which she argued were based on speculation.

The final judgment was consistent with the June 10, 2021 ruling as to spousal support; indeed the family law court largely copied and pasted the June 10 ruling's discussion of spousal support into the final judgment.

### 2. *Analysis*

Apart from a section heading in her opening brief stating, "*The Absence of a Statement of Decision is Prejudicial Because it Effectively Precludes Appellate Review as to Spousal Support,*"

20

Carmen offers no argument as to how she was prejudiced by the family law court not issuing a statement of decision on that issue. Rather, she notes the family law court granted her less support than she requested in her trial brief, that she requested a statement of decision regarding the trial court's imputation of her future income, and that she objected below that the court's calculation of her future income would not allow her to meet her reasonable needs. The mere recounting of the proceedings below, without any argument, is insufficient to show error on appeal. (See *In re Tobacco Cases II* (2015) 240 Cal.App.4th 779, 808 (*Tobacco Cases*) [" '[A] party's failure to perform its duty to provide argument, citations to the record, and legal authority in support of a contention may be treated as a waiver of the issue.' "].)

We further note that on the issue of spousal support, the family law court provided a detailed explanation of its reasoning, both in its June 10, 2021 ruling and in the final judgment, and thus provided extensive fodder for appellate review.

In addition to challenging the absence of a statement of decision, Carmen challenges the spousal support award, arguing the income the family law court imputed to her of $60,000 per year would be insufficient "to meet her reasonable needs based on the couple's accustomed marital standard of living" on an annual income of $600,000. She claims the court's assumption that she could find more work in the future than she had in the past was "speculative," given "her childcare obligations and her years out of the work force." Carmen further argues the court "did not give sufficient weight to the couple's accustomed marital standard of living." We review spousal support orders for abuse of discretion.

21

(See *In re Marriage of Maher & Strawn* (2021) 63 Cal.App.5th 356, 363.)

Other than the above objections, Carmen does not explain how the family law court's calculations were in error, nor does she propose an alternative calculation. Her claim that the marital standard of living should be based on an annual income of $600,000 disregards the court's finding that this number was inflated by nonpayment of taxes, and the actual number was significantly lower. Of that lower income amount, the court further found most of the funds went to support the children, leaving approximately $6,000 per month for Carmen. The court found $5,000 per month to be a reasonable amount, an amount already achievable at Carmen's current stated rate of pay and an increase of work hours now possible with the children back in school following the end of COVID-19 disruptions. The court did not assume Carmen could achieve that income immediately, but ordered Michael to provide support for six years. Carmen fails to show the court's support order was not carefully considered and reasonable.

Carmen cites cases for the proposition that support orders may not be based on speculation, but her cases, which we discuss below, do not suggest the order in the instant case was speculative.

In *In re Marriage of Gavron* (1988) 203 Cal.App.3d 705 (*Gavron*), the trial court in 1987 terminated a spousal support order issued in 1979, citing the wife's " 'failure to become employable or to seek training after so many years.' " (*Id.* at pp. 707–708, 710.) The termination order provided that the support would continue for another four and a half months and then cease. (*Id.* at p. 708.)

22

The Court of Appeal reversed the termination order, holding that because the original 1979 spousal support order placed no expectations on the wife to find employment, her lack of employment in 1987 did not constitute a change of circumstance justifying termination of the order. (*Gavron*, *supra*, 203 Cal.App.3d at p. 711.) Further, the termination order cutting off support in four and a half months "was not 'based upon reasonable inferences to be drawn from the evidence, [but upon] mere hopes or speculative expectations.' [Citation.]" (*Id.* at pp. 712–713.) The appellate court held that orders decreasing support payments over time " ' "cannot be based on mere supposition as to what the supported party's future circumstances might be. Evidence in the record must support a reasonable inference that needs will be less with each step-down and that the spouse can realistically be self-supporting at the time nominal payments are set to begin." [Citation.]' [Citation.]" (*Id.* at p. 713.) Because the wife had had only sporadic employment, and none since 1984, the record was "barren of any such evidence." (*Id.* at pp. 708–709, 713.)

In *In re Marriage of Prietsch & Calhoun* (1987) 190 Cal.App.3d 645, in a majority opinion, the Court of Appeal reversed an order gradually reducing spousal support, holding the order was unsupported by evidence that the wife's financial situation would significantly improve over the nine-year period covered by the order. (*Id.* at pp. 653, 659.) Specifically, the husband had offered no evidence to support his arguments that the wife could make more money in a different city, that her earning capacity would grow by virtue of advancement in her career, that the favorable currency exchange rate between Sweden, where the wife lived, and the United States would

23

continue, or that the wife would inherit money upon her parents' deaths.  (*Id.* at pp. 657–659.)

In *In re Marriage of Rosan* (1972) 24 Cal.App.3d 885, the Court of Appeal held that a spousal support order that phased out after just three years was based on speculation, not evidence. (See *id.* at p. 896.)  "Here, the evidence is that Wife was not employed during the marriage except for a very brief period; there was no evidence that she had experience, training or education to qualify her for suitable employment; she was not employed at the time of trial and, indeed, was just about to undertake a course of instruction in real estate and some college courses to prepare herself for employment.  Under these circumstances her future earnings and earning capacity were completely unknown, and such unknown future developments are better left to modification proceedings which have been provided for that very purpose, than to automatic reduction provisions operative one and two years, respectively, in the future." (*Ibid.*)

The facts of Carmen's cited cases are too dissimilar to be instructive here.  In *Gavron* and *Rosan*, there was no evidence the supported parties had the skills or experience to support themselves within the timeframe set by the trial court.  In *Prietsch & Calhoun*, the trial court assumed, without evidence, that the wife could work more hours and earn a higher salary.  In the instant case, in contrast, the family law court imputed income to Carmen based on her own current stated rate of pay and an assumption of 30 hours of work a week, which Carmen's own paystubs indicated she had achieved at times, and presumably could do more readily in the future because her children were back in school following the end of the COVID-19 shutdown.  The court also awarded Carmen support for six years, giving her

24

significant time to obtain a job that would provide her additional hours.  The support award was not speculative, but supported by reasonable assumptions based on the evidence.

**E.** **Carmen Fails To Show Error From the Family Law Court Attributing to Her the Debt Owed to the Stager**

In the final judgment, the family law court stated, "To the extent that there is any money due to the stager of the Sunstone house for the stager's property missing from the Sunstone house after the house sold, that debt is attributed in full to [Carmen].  Based on the trial testimony, [Michael] carried his burden of proof that [Carmen] has the missing property."

Carmen argues the stager's claim "was Michael's separate property issue that arose post-separation," and "such claims are beyond the jurisdiction of a family law court."  She cites *In re Marriage of Braud* (1996) 45 Cal.App.4th 797, which held that the court in a dissolution action " 'may *characterize* disputed assets and liabilities as being separate or community, may *confirm* separate property to the owner spouse and, to the extent permitted by statute, [and] may order *reimbursement* from the community to a party's separate estate or to the community from a party's separate estate. . . . But unless the parties otherwise agree, the court's jurisdiction over *separate property* extends no further . . . .' [Citations.]"  (*Id.* at p. 810.)

Apart from the above cursory argument and the citation to *Braud*, Carmen offers no support for her jurisdictional challenge, that is, neither evidence nor legal authority establishing the stager's claim or whether that claim would be Michael's separate property.  She provides insufficient record citations for us to determine the specifics of the stager's claim or the trial testimony

25

addressing that claim.  The one page in the reporter's transcript Carmen cites does not, in fact, address the stager's claim, and the portion of Michael's trial brief she cites merely notes "[t]he parties" owed $10,000 to the stager because "many items were missing," and "[b]oth parties deny taking them."  Again, it is Carmen's duty " 'to provide argument, citations to the record, and legal authority in support of a contention,' " and her failure to do so constitutes waiver of the issue.  (*Tobacco Cases*, *supra*, 240 Cal.App.4th at p. 808.)

## DISPOSITION

The judgment is reversed to the extent it denies the relief sought in Carmen Pyrah Sanchez's pocket brief dated May 27, 2021, concerning the return of certain photographs and videos. The matter is remanded and the family law court is instructed to prepare a statement of decision under Code of Civil Procedure section 632 and California Rules of Court, rule 3.1590 regarding its ruling on the relief requested in the pocket brief.  The judgment in all other respects is affirmed.  The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.          CHANEY, J.

26